Judah M. Gersh
Brian M. Joos
VISCOMI, GERSH, SIMPSON & JOOS, PLLP
121 Wisconsin Avenue
Whitefish, MT  59937
(406) 862-7800
gersh@bigskyattorneys.com
joos@bigskyattorneys.com

Evan F. Danno
DANNO LAW FIRM, P.C.
725 South Main Street
Kalispell, MT  59901
(406) 755-4100
evan@dannolawfirm.com

Alan J. Lerner
LERNER LAW FIRM
P.O. Box 1158
Kalispell, MT 59903-1158
lerner@lernerlawmt.com

Allan M. McGarvey
McGARVEY, HEBERLING, SULLIVAN & LACEY, P.C.
345 First Ave. E.
Kalispell, MT 59901
amcgarvey@mcgarveylaw.com

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | | |
|---|---|---|
| JAMES LEE CONSTRUCTION, INC., | ) | Case 9:20-cv-00068-DVM |
| a Montana Corp., JAMES B. LEE, and | ) | Judge: Hon. Donald W. Molloy |
| TRACY D. LEE, husband and wife, | ) | |
| | ) | <u>AMENDED COMPLAINT,</u> |
| Plaintiffs, | ) | <u>CLASS ACTION CLAIMS</u> |
| | ) | <u>AND JURY DEMAND</u> |
| vs. | ) | |
| | ) | |
| GOVERNMENT EMPLOYEES | ) | |
| INSURANCE COMPANY, a Corp., | ) | |
| GEICO GENERAL INSURANCE | ) | |
| COMPANY, a Corp., GEICO | ) | |
| ADVANTAGE INSURANCE COMPANY, | ) | |
| a Corp.,  GEICO CASUALTY COMPANY, | ) | |
| a Corp., GIECO CHOICE | ) | |
| INSURANCE COMPANY, a Corp., | ) | |
| GEICO INDEMNITY COMPANY, a | ) | |
| Corp., GEICO MARINE | ) | |
| INSURANCE COMPANY, a Corp., | ) | |
| | ) | |
| Defendants. | ) | |

COME NOW Plaintiffs, James Lee Construction, Inc. a Montana corporation, James B. Lee and Tracy D. Lee, husband and wife (hereafter "Lee" or "Plaintiffs" unless otherwise designated), by and through their attorneys of record, and pursuant to Rule 15(a)(1), Fed.R.Civ.P., as well as the Defendants' request for amendment, hereby amend their Complaint to complain and allege as follows:

## JURISDICTION

1.      This Court has jurisdiction over this case. Plaintiffs originally filed this action in the Eleventh Judicial District Court, Flathead County. However, Plaintiffs recognize for the reasons stated in Defendants' Notice of Removal (Doc. 1) that jurisdiction is also proper in this Court, and therefore Plaintiffs will not seek remand. The amount in controversy for Plaintiffs exceeds $75,000, and for the class exceeds $5 million. The Lees are residents and citizens of the State of Montana. Defendants Government Employees Insurance Company, a Corp. (hereafter "GEICO"), GEICO General Insurance Company, a Corp., (hereafter "GEICO General") GEICO Advantage Insurance Company, a Corp., GEICO Casualty Company, a Corp., GIECO Choice Insurance Company, a Corp., GEICO Indemnity Company, a Corp., and GEICO Marine Insurance Company, a Corp., are foreign corporations with their principal places of business outside Montana. When all insurance companies are referred to generally, they shall be referred to as "Defendant Insurance Companies".

## INTRODUCTION

2.      This case asserts claims for breach of contractual and tort duties of all of the Defendant Insurance Companies named above owed to Lees and similarly situated Montana insureds of said Defendant Insurance Companies.  Plaintiffs suffered damages in a motor vehicle accident in Flathead County, Montana.  The

Defendants' duties arose out of an automobile accident in which James Lee Construction, Inc., suffered property damage, James B. Lee suffered bodily injury and, Tracy D. Lee suffered a loss of consortium, through the negligence of persons other than themselves. The automobile accident triggered duties under Plaintiffs' policies with Defendants GEICO and GEICO General. Those coverages include (a) indemnity for property damage losses, (b) medical payment reimbursement, (c) "Underinsured Motorists Coverage," and rights attendant to such coverages, including the right to be made whole before the insureds' tort claim is usurped or interfered with.

3.     After paying benefits under the Lees' property damage coverage, Defendant GEICO, wrongfully asserted an ownership right in the Plaintiffs' cause of action by an improper assertion of subrogation.

4.     In addition to a breach of contractual duties, the improper subrogation involved elements of (a) an exercise of ownership over Plaintiffs' claim and proceeds thereof, (b) failures to investigate and adjust, (c) deceptive and misleading statements and practices, and (d) cooperative and concerted conduct of all Defendant Insurance Companies, to perpetrate  (i) a conversion of Plaintiffs' third party claim, (ii) bad faith in communications and honoring contractual rights, (iii) civil conspiracy and aiding and abetting, and (iv) intentional tortious interference with contract-related duties.

5.     The subrogation conduct alleged herein was part of a system of programmatic assertion of wrongful subrogation, jointly developed and administered by all of the Defendant Insurance Companies, for which reason Plaintiffs seek relief for similarly situated victims of the subrogation program through class-wide relief.

6.     This case also asserts the claims arising from Defendant GEICO's failure to adjust and pay on Plaintiffs' claim for benefits for underinsured losses, which claims upon information and belief have still not been adjusted, and settlement of which claims have still not been paid or offered.

PARTIES AND GENERAL ALLEGATIONS

7.     The collision underlying this case occurred in Flathead County, Montana on August 5, 2019. The at-fault driver was Mikala Haidys, who is insured by The General Insurance Co. Plaintiffs have asserted claims under Ms. Haidys' insurance policy. Pursuant to those claims, Plaintiffs have received $25,000.00 for bodily injury under Ms. Haidys' insurance policy, as well as $3,156.65 for property damage. However, Plaintiffs have released neither Ms. Haidys' insurer nor Ms. Haidys herself. Upon information and belief, the limits of Ms. Haidys' insurance policy are $25,000.00 per person and $50,000.00 per occurrence for bodily injury, and $20,000.00 for property damage. While investigation continues, Plaintiffs' property damages total at least $24,660.18, including the following:

a. for total loss to plaintiff's vehicle, at least $19,124.90;

b. for loss of use of the damaged vehicle, at least $2,586.72;

c. for damage or loss of vehicle contents, at least $2,948.56; and

d. any other damages that may be revealed during investigation.

8.      Defendant Insurance Companies are corporations existing under the laws of States in the United States of America other than Montana, and have their principal place of business outside of Montana. Defendant Insurance Companies are authorized to transact business in Montana. Defendant Insurance Companies regularly transact business in Montana. Defendant Insurance Companies are jointly, severally and vicariously liable for the acts and omissions of each other on all tort claims.

9.      Defendant Insurance Companies are insurers who issue insurance policies in the State of Montana, and jointly and programmatically use common subrogation strategy and adjustment procedures to jointly assert wrongful subrogation claims.

10.     In addition to the adjustment of Plaintiffs' claims within the state of Montana, Defendant Insurance Companies also jointly adjust and assert automobile subrogation claims in the State of Montana by (a) working together to design the adjustment procedures and subrogation assertion strategies knowingly designed to deprive insureds of their made whole rights; (b) jointly  employing

claims  adjusters under a single jointly administered employment arrangement; (c) jointly  training  these adjusters to utilize for all such companies the same procedures in adjusting, including the procedures for collection of subrogation arising from damages suffered by Montana insureds; (d) jointly managing and directing these adjusters on specific procedures for asserting subrogation, and adjusting and evaluating subrogation rights, including the procedures for investigation and evaluation of the insureds losses and collection of subrogation arising from damages suffered by Montana insureds; (e) jointly  compensating the adjusters  for such conduct, and (f) jointly paying to such adjusters bonuses reflecting common profitability experienced by the collective companies through the  implementation of the jointly developed and administered adjustment and subrogation strategies.

11.    Defendant Insurance Companies further have engaged in concerted action, with each other in the procedures for collection of subrogation arising from damages suffered by Montana insureds. Through this relationship and direction, Defendant Insurance Companies are "person[s]" under §33-18-201 and §33-1-202, MCA, that owe adjustment duties to Plaintiffs and members of the class. Defendant Insurance Companies have further engaged in concerted action with each other on the adjustment of Plaintiffs' claims and the improper procedures

used to usurp plaintiffs' cause of action and collect subrogation arising from damages suffered by Montana insureds.

12.     Defendant Insurance Companies jointly transact business under various names, and through companies which utilize the same or substantially the same name or names, which are jointly funded by and act as a common agent for Defendant Insurance Companies. The subrogation language of Defendant Insurance Companies' insurance policies and contracts are identical or substantially identical for all Defendant Insurance Companies. The adjusting procedures for Defendant Insurance Companies are identical, were commonly developed and are jointly administered.

13.     Defendant Insurance Companies are part of a group of businesses conducting business in Montana that aid and abet and conspire with each other with respect to implementing the unlawful subrogation conduct described in this Complaint against all insureds of Defendant Insurance Companies, and are otherwise connected in a common course of conduct and scheme to deny Montana insureds' appropriate benefits through jointly conceived, jointly designed, and jointly and knowingly implemented claim usurpation and claim adjustment including the wrongful collection and conversion of subrogation rights and funds in violation of Montana law.

14.     The Defendant Insurance Companies jointly administered the subrogation and claim adjustment practices on Montana claims as part of a common course of conduct and scheme.

15.     The acts and omissions relating to Plaintiffs which give rise to this case occurred within Montana and are related to a claim that arose in Flathead County, Montana.

16.     Defendant Insurance Companies are jointly and severally liable to Plaintiffs and the class because each was involved in a common scheme, and each aided and abetted the other in the acts and omissions which constitute the basis for this action and by aiding and abetting the unlawful conduct of each company.

17.     Defendant Insurance Companies are jointly and severally liable to Plaintiffs and the class and their actions are juridically linked such that resolution, including declaratory and remedial relief with respect to the propriety of the conduct alleged, with respect to one defendant is necessarily a resolution with respect to all such defendants and all class members. This Court should address the class claims against all defendants based on the adequate juridical link that exists.

18.     In addition, all Defendant Insurance Companies are jointly and severally liable to Plaintiffs and the class under the theory of civil conspiracy, and the elements of Montana law, as set forth in more detail below.

19.     Plaintiffs had an insurance policies with GEICO and GEICO General, and a claim and adjusting relationship with Defendant Insurance Companies, as a first party insured in regards to property damage and other casualty insurance coverage.  All insureds in the class are situated and treated similarly.

20.     James B. Lee also has underinsured motorist coverage with GEICO and GEICO General.

21.     This case against Defendant Insurance Companies arises in part under the insurance policy contract and the statutory claims adjustment duties and tort duties under Montana's Unfair Trade Practices Act, set forth by §33-18-201 and §33-18-242, MCA, and common law.

22.     James B. Lee suffered bodily injury, Tracy D. Lee suffered a loss of consortium and, the Plaintiffs suffered damage to their property in an automobile accident that occurred in Flathead County, Montana, on August 5, 2019. Specifically, as a result of the collision, Plaintiffs suffered losses, including, but not limited to:

•       The total loss of Plaintiffs' vehicle;

•       Other property losses not included in such Physical Damage
        Coverages, for which losses Plaintiffs have not been compensated;

- Losses and detriments resulting from the tortious destruction of the vehicle including loss of value of second set of tires, loss of value of prepaid taxes and registration fees;

- Expense of uncovered and unpaid temporary replacement vehicle and rental charges and loss of use;

- Attorney fees and costs of securing recovery (from the tortfeasors and their insurer) for property damage recoveries in the current amount of $1,098.92, but such fees may be greater since the property damage claim against Ms. Haidys has not been settled;

- Medical expenses, upon information and belief amounting to $15,896.20 as of 2/19/2020, but as James B. Lee is still receiving and/or seeking treatment for his injuries, additional medical expenses continue to accumulate;

- Resulting loss of income from employment, upon information and belief in the amount of $2,798.64. at the present time, but Mr. Lee is still receiving treatment for his injuries and these losses may increase;

- Loss of earnings and earning capacity to be determined;

- General damages for the personal injuries;

- Loss of consortium;

- Attorney fees and costs of securing recovery of bodily injury and loss of consortium damages (from the tortfeasor and their insurer), in the current amount of $10,131.08, but such fees may be greater since the damage claim against Ms. Haidys has not been settled; and,

- Any other recoverable damages not specifically listed above.

23.   Plaintiffs have not been made whole for either (a) items of property damage or (b) items of personal injury losses detailed in the preceding paragraph.

24.   Plaintiffs have unrecovered property damage losses as well as unrecovered injury losses with respect to which they were dependent on (a) their causes of action against the tortfeasors and their insurer, to the extent of its coverage limits, (b) the proceeds paid by the tortfeasors or their insurer on that cause of action, and (c) the underinsured coverage under Plaintiffs' insurance contracts with GEICO and GEICO General.

25.   GEICO and GEICO General, aided by, abetted by, and conspiring with, the other Defendant Insurance Companies, knowingly usurped and asserted an interest in the Plaintiffs' causes of action against the tortfeasors, and collected and kept subrogation from the tortfeasors' insurer (The General) without Plaintiffs being made whole for either their bodily injury or property damage losses, including property damage losses not covered by GEICO's policy, the attorney fee and costs that will be required to recover those losses, James B. Lee's bodily injury

damages and losses, Tracy D. Lee's loss of consortium and, the attorney fees and expenses required to recover those losses.

26.     GEICO and GEICO General paid Plaintiffs benefits under the Plaintiffs' property coverage and medical payment coverage, but paid no other property or bodily injury losses. Without notifying Plaintiffs of the insureds' right to be made whole before subrogation, GEICO and GEICO General asserted a subrogation interest in Plaintiffs' cause of action against the at-fault driver and her insurer and proceeded to collect and convert to its own use the full amount of the property damage payments GEICO had made to Plaintiffs, less Plaintiffs' collision deductible which was returned to them. Upon information and belief, GEICO and GEICO General recovered $14,194.00 via this subrogation from the at-fault driver's insurer.

27.     Plaintiffs had not been made whole for either their property damage or bodily injury at the time the subrogation was asserted and subrogation payments were received by GEICO, and have not been made whole at the time of the filing of this Complaint. Plaintiffs have been deprived of the benefit of the coverages for which they paid GEICO and GEICO General premiums, and have suffered their cause of action being impaired and the denial of the full (net) benefit of their contractual coverages.

28.     The Defendant Insurance Companies failed to conduct a reasonable investigation to determine if Plaintiffs would be or were made whole, in violation of §33-18-201 (4), MCA.  The Defendant Insurance Companies misrepresented facts regarding the insurance policy by a deceptive scheme of using a hidden procedure to intentionally usurp the  insured's cause of action for its own benefit, undermine  its insureds' rights to be made whole before collecting and keeping subrogation, by concealing its subrogation recovery from  its own insured, by asserting the misrepresentation that there is a coverage limitation for losses payable by a tortfeasors' liability insurance, which representations and concealments and scheme, each and collectively constitute a violation of §33-18-201 (1), MCA. Defendant Insurance Companies failed and neglected to attempt, in good faith,  to negotiate  a prompt,  fair and equitable settlement of (a) their alleged  subrogation interest  in Plaintiffs' claim  against a third party and (b) James B. Lee's and Tracy D. Lee's underinsured claim, in violation of §33-18-201 (6), MCA.   GEICO, GEICO General and the Defendant Insurance Companies violated §33-18-201 (4) and (5), MCA by failing to pay on James B. Lee's and Tracy D. Lee's underinsured claim without conducting a sufficient investigation to substantiate a basis for such failure, and by failing to timely affirm under insured coverage. GEICO and GEICO General violated the *Ridley* doctrine and violated §33-18-201 (6) and (13) by failing to reasonably advance medical expenses suffered by James

B. Lee from the underinsured coverages.  Defendant Insurance Companies violated other subsections of §33-18-201, MCA, as well.

29.    Defendant Insurance Companies violated Montana's clear and well-established law and public policy by collecting and retaining a premium for property and casualty coverages while asserting and maintaining a claim to an absolute right to collect and keep subrogation from third-parties who are liable to the insured without the insured being made whole, and without first making a determination of the insured's unrecovered losses as required by Montana law.

30.    As a result of the Defendant Insurance Companies' acts and omissions, Plaintiffs have suffered damages to their cause of action, delay in learning of the impairment to their cause of action, delay of compensation for the losses sustained in the automobile accident, and have suffered GEICO's, GEICO General's and the Defendant Insurance Companies' conversion of, and interference with (a) the Plaintiffs' property interest in their cause of action against the at fault parties, and (b) proceeds of Plaintiffs' claim against the at-fault parties, together with lost interest and attorney fees.

COUNT ONE
(Underinsured Coverage Claim against GIECO and GEICO General)

31.    Plaintiffs incorporate each allegation in the paragraphs above.

32.    James B. Lee and Tracy D. Lee have underinsured coverage with GEICO and GEICO General, under the two policies.

33.    The at fault parties' bodily injury insurance coverage limits are inadequate to cover James B. Lee's bodily injury damages and/or Tracy D. Lee's loss of consortium and have been exhausted.  James B. Lee and Tracy D. Lee are therefore entitled to benefits under their underinsured coverage with GEICO and GEICO General.

34.    GEICO and GEICO General have made no payment and no offer of payment under the underinsured coverage of their policies.

35.    GEICO and GEICO General are liable to James B. Lee and Tracy D. Lee for such amount as the Jury finds are due under the terms of the under insured coverage up to the limits of that coverage.  GEICO and GEICO General are further liable to James B. Lee and Tracy D. Lee for their reasonable attorney fees and costs of suit.

## COUNT TWO
(Statutory Insurance Bad Faith against the Defendant Insurers)

36.     Plaintiffs incorporate each allegation in the paragraphs above.

37.    The acts and omissions of Defendant Insurance Companies constitute statutory insurance bad faith under §33-18-242, MCA, for the violations of the provisions of §33-18-201, MCA, described in Paragraph 28 above.  Additionally, as described in Paragraph 28 above, GEICO and GEICO General have committed an actionable violation of §33-18-201(6) and (13), MCA, and the Ridley doctrine

by refusing to advance medical and other expenses against the underinsured policies' limits.

38.    Defendant Insurance Companies acted in concert, aided and abetted each other, and combined in a civil conspiracy, when pursuing on a programmatic basis the wrongful subrogation conduct alleged above so as to violate the provisions §33-18-201 MCA , such that all said companies are jointly and severally liable for those violations.

39.    Plaintiffs have been damaged by said violations of §33-18-201, MCA, and have been deprived of (a) the benefit of their insurance contract with GEICO and GEICO General, (b) the full benefit of an unimpaired cause of action against the tortfeasor, and under their insurer's policy. They have also suffered delay in the resolution of their claims and the need to hire an attorney to recover what was wrongfully denied and delayed. GEICO and GEICO General's failure to attempt to settle James B. Lee's and Tracy D. Lee's underinsured claims (and their further refusal to advance medical expenses and other damages) has caused losses including attorney fees incurred to remedy the wrongs, and lost interest and time value of money. Defendant Insurance Companies' acts and omissions were committed with "actual malice" pursuant to §27-1-221, MCA, such that punitive damages should be assessed against Defendant Insurance Companies pursuant to Montana law, for which they should be held jointly and severally liable.

## COUNT THREE
(Breach of the Insurance Policy Contract and Implied Covenant of Good Faith)

40.    Plaintiffs incorporate each allegation in the paragraphs above.

41.    The insurance contract provides that GEICO may be subrogated to Plaintiffs' rights to recover from a third party tortfeasor and its insurer. The contract provision allowing such subrogation must be construed in conformance with Montana law, and would be in violation of Montana public policy to the extent that it were construed or applied to allow subrogation before compliance with Montana's made whole rule. Subrogation in violation of this made whole rule violates Montana public policy and is unenforceable regardless of any contract language providing to the contrary.

42.    Defendant Insurance Companies' programmatic assertion of a subrogated right arising from an automobile accident with a third party before the insured has been made whole for all losses and costs of recovery, including GEICO's assertion of subrogation to Plaintiffs' cause of action against the tortfeasors in this claim, violates Montana public policy and breaches the terms of the insurance contract as conformed to the requirements of Montana law. Such subrogation also breaches the contract by depriving Defendant Insurance Companies' insureds of the coverage for which they paid a premium and by failing to indemnify the risk they were paid to insure.

43.     The acts and omissions of GEICO and Defendant Insurance Companies in its and their actions, misrepresentations and concealment in respect to subrogation all as described above, also constitute breach of the implied and express covenants of the insurance policy contract.  Specifically, implied in the insurance contract it made with Plaintiffs, GEICO's covenant not to conceal, misrepresent, or assert utterly unjustifiable positions of law contrary to clear and well established authority in order to deny its insured the benefit of that contract. Also implied is the covenant to attempt to timely investigate, reasonably negotiate and attempt to settle claims under GEICO's underinsurance coverage.

44.     Plaintiffs have also been damaged by breach of the policy's implied covenant of good faith and fair dealing with respect to GEICO's and Defendant Insurance Companies' subrogation conduct.  Specifically, Plaintiffs were deceived and to discover that they had been deprived of (a) the benefit of their insurance contract with GEICO, (b) the benefit of an unimpaired cause of action against the tortfeasor, and (c) the benefit of full (not depleted) liability coverage under the tortfeasors' insurance. Plaintiffs have also suffered delay in the resolution of their claims and the need to hire an attorney to recover what was wrongfully denied and delayed. These losses include distress, attorney fees incurred to remedy the wrongs, and lost interest and time value of money.

## COUNT FOUR
(Conversion)

45.   Plaintiffs incorporate each allegation in the paragraphs above.

46.   The "subrogation" collected from the tortfeasors' liability insurer by GEICO and the Defendant Insurance Companies is a usurpation of, and exertion of control over Plaintiffs' cause of action and proceeds thereof, and constitutes a conversion of the Plaintiffs' property rights. Such usurpation and assertion of control is without authority under clear Montana law because the insurer has failed (a) to make an investigation and determination of all of the losses of the insured, and (b) to assure that the Plaintiffs have been made whole for all their damages as recognized by Montana law.

47.   GEICO and the Defendant Insurance Companies have not met either prerequisite to subrogation. They have not attempted to investigate, evaluate or quantify the amount of Plaintiffs' losses which are outside of the coverage's provided by GEICO and GEICO General. The Plaintiffs have not been made whole. Still, by design and implementation of a wrongful subrogation program, GEICO and the Defendant Insurance Companies have usurped and converted the Plaintiffs' cause of action and converted the proceeds of Plaintiffs' cause of action, namely the funds collected from the tortfeasors' liability insurer, to their use, and have used the funds and earnings thereon as their own rather than as the property of the Plaintiffs , and have done so without giving notice so that the conversion would be hidden.

48.     GEICO and the Defendant Insurance Companies unlawfully

converted Plaintiffs' funds and have damaged the Plaintiffs in the amount of the

converted subrogation recovery and interest upon that amount at the rate allowed

by Montana law until the amount is returned to the Plaintiffs. GEICO and

Defendant Insurance Companies are liable to Plaintiffs for such damages, plus

interest and attorney fees.

49.     The conversion of the insured's rights and the concealment were done

with actual malice such that assessment of punitive damages should be made

against GEICO and the Defendant Insurance Companies.

<u>COUNT FIVE</u>
(Civil Conspiracy)

50.     Plaintiffs incorporate each allegation in the paragraphs above. This

Count is not herein described as a separate tort but rather as a statement of grounds

to establish the joint and several liability of GEICO, GEICO GENERAL and the

Defendant Insurance Companies.

51.     The acts and omissions of GEICO and the Defendant Insurance

Companies constitute a civil conspiracy: (a) by reason of the fact that the

Defendant Insurance Companies jointly created, financed and administered a

wrongful subrogation program (with a goal to assert subrogation without

complying with Montana's made-whole rule so that the insurers could deprive their

insureds of their rights under their policies and/or their tort causes of action), and

the Defendant Insurance Companies constitute two or more defendants who have

joined together to commit that wrong; (b) all Defendant Insurance Companies

jointly sought to accomplish the goal of collecting subrogation from third

parties before Plaintiffs and other Montana insureds were made whole in order

to gain advantage of the improperly taken subrogation recoveries, and the

defendants did so by working together through common agents, manuals,

directives and a subrogation program design, with a goal of mutual benefit to each

company participating in the wrongful program; (c) all Defendant Insurance

Companies agreed on the goal stated above and on the methods of joint

administration of a single subrogation grogram to accomplish said goal; (d) all

Defendant Insurance Companies committed numerous acts in furtherance of the

goal of obtaining subrogation through methods in direct conflict with the

requirements of Montana's made-whole rule including each company's

participation in the design of the program, each company's directions to and

training of common agents, each company's payment of the costs of administering

the program, each company's usurpation of insureds cause of actions through such

jointly trained, directed and paid agents, and each company's receipt of and use of

funds obtained through the wrongful subrogation program; (e) Plaintiffs were

damaged as described above when the jointly designed, financed and implemented

joint subrogation program was used to take away Plaintiffs' claims and recoveries from the tortfeasors and their insurer.

52.    GEICO and the Defendant Insurance Companies' acts and omissions were committed with "actual malice" pursuant to §27-1-221, MCA. Punitive damages should be jointly and severally assessed against GEICO and the Defendant Insurance Companies pursuant to Montana law.

## COUNT SIX
(Aiding and Abetting)

53.     Plaintiffs incorporate each allegation in the paragraphs above. This

Count is not herein described as a separate tort but rather as a statement of the

basis to establish the joint and several liability of GEICO and the Defendant

Insurance Companies.

54.     The acts and omissions of GEICO and the Defendant Insurance

Companies constitute aiding and abetting each other in the commission of the

wrongs set forth herein,  so as to create joint and several liability under  § 876 of

the Restatement (Second) of Torts, because, by reason of the specific facts alleged

above, all Defendant Insurance Companies (a) acted act in concert with each other

and pursuant to a common design to obtain the benefit of a wrongful subrogation

program with knowledge that the wrongful subrogation program and procedures

violated Montana's made-whole rules, (b) deprived their insureds of the benefit of

their insurance contract, wrongfully impaired their insureds' claim against

tortfeasors, depleted the tortfeasors' liability insurance, and converted to the

Defendant Insurance Companies the proceeds of the insureds' claim against the

tortfeasors. All Defendant Insurance Companies are jointly and severally liable to

the Lees for all damages awarded by the Jury.

55.     The Defendant Insurance Companies' acts and omissions were

committed with "actual malice" pursuant to §27-1-221, MCA, such that punitive

damages should be jointly and severally assessed against the Defendant Insurance Companies pursuant to Montana law.

COUNT SEVEN
(Class Claims)

56.     Plaintiffs incorporate all of the foregoing paragraphs in these class claims and state that the allegations are hereby incorporated in each separate claim and count for relief asserted by the class. Plaintiffs brings this action as a class action on behalf of individuals and commercial and other entities defined as follows:

- Who were insured under a motor vehicle insurance policy issued by GEICO, GIECO General or one of the Defendant Insurance Companies in Montana;

- Who, as a result of a motor vehicle accident, suffered losses covered by such policy;

- Who received payments under the coverages of such policy;

- With respect to whom one or more of the Defendant Insurance Companies recovered, under a claim of subrogation, from a third party for some or all of such payments;

- With respect to whom the subrogation was recovered by the insurer not more than eight (8) years preceding the filing of the Complaint in this action.

57.     For each member of the class, GEICO, GIECO General and the

Defendant Insurance Companies recovered and withheld subrogation in derogation

of their insureds' rights under Montana law by

- failing to conduct the prerequisite made-whole investigation and
  analysis;

- improperly usurping and asserting a right to the insured's claim and
  cause of action against third party tortfeasors and their liability
  insurers;

- obtaining  and converting proceeds of the improper subrogation and
  converting the same to their own use;

- impairing their insureds' claims against the tortfeasor and her liability
  coverages;

- delaying the receipt of compensation for the insureds' losses; and

- violating the contract provision  for subrogation as conformed to
  Montana public policy and depriving the insureds of the benefit of
  their contract of insurance with GEICO, GIECO General and the
  Defendant Insurance Companies.

58.     The policy language and incorporated terms including the mandatory

provisions of Montana's made whole rule, under which subrogation arises, and

with respect to which subrogation is permitted and constrained, is identical for all class members.

59.     GEICO, GIECO General and the Defendant Insurance Companies have treated all class members according to the same pattern and program of subrogation.  GEICO's, GIECO General's and the Defendant Insurance Companies' subrogation-related conduct described herein was jointly and programmatically designed and implemented to convert and take advantage of the insureds' third party claims, to violate the subrogation provision of the insurance contract (including the incorporated made whole limitation thereon), and to deprive the insureds of their contractual rights to benefits under the contract and to be made whole before subrogation was pursued.

60.     For each member of the class GEICO, GIECO General and the Defendant Insurance Companies (a) commonly evaluate and adjust claims, including an identical and programmatic procedure for evaluating the availability and amount of subrogation arising from such claims, (b) use commonly developed adjusting procedures, and (c) employ commonly developed and identical policy construction and application, including policy provisions which apply to subrogation or reimbursement for benefits paid to insureds.

61.     For all class members, GEICO, GIECO General and the Defendant Insurance Companies and have pursued a commonly developed course or conduct

in respect to the issues raised by this case. Specifically, when designing and implementing the wrongful subrogation program, GEICO, GIECO General and the Defendant Insurance Companies commonly utilized as agents companies or individuals transacting business under various names or which utilize the same or substantially the same name, which companies' and agents' activities are jointly funded by all Defendant Insurance Companies and utilize the commonly developed subrogation scheme and procedures. GEICO, GIECO General and the Defendant Insurance Companies are jointly and severally liable to the class because each was involved in a common scheme, and each aided and abetted the other in the acts and omissions which make up the basis for this action and by aiding and abetting the unlawful conduct of each company.

62.     GEICO, GIECO General and the Defendant Insurance Companies are also jointly and severally liable to the class and subject to common class adjudication because of the juridical link between these defendant companies and their conduct of subrogation  such that resolution  of the propriety of the conduct alleged with respect to one defendant and its insureds (including declaratory and appropriate remedial relief) is necessarily a resolution with respect to all such defendants and their insureds.

63.     In addition, GEICO, GIECO General and the Defendant Insurance Companies are jointly and severally liable to each class member under the same

grounds of conspiracy, and aiding abetting as detailed in the allegations above on behalf of Plaintiffs.

64.    The Lees (Plaintiffs) are members of the class they seek to represent.

65.    The individuals in the class defined above number in the hundreds or thousands and are so numerous that individual joinder of class members as plaintiffs is impracticable.

66.    There are questions of law and fact common to each member of the class, including, but not limited  to: (a) whether GEICO's, GIECO General's and the Defendant Insurance Companies'  failure  to correctly apply subrogation was a violation of substantially identical insurance policy provisions and Montana's made-whole rule, (b) whether the subrogation program and execution thereof constituted violations of the Unfair Claim Settlement Practices Act; (c) whether GEICO's, GIECO General's and the Defendant Insurance Companies' failure to investigate and adjust based on their insureds'  "made whole"  rights   constituted violations of the implied contractual covenant of good faith and fair dealing common to the insurance policies and/or denial of the benefit of coverages under the Defendant Insurance Companies policies; (d) whether GEICO's, GIECO General's and the Defendant Insurance Companies' conduct was malicious warranting the assessment of punitive damages; (e) whether GEICO's, GIECO General's and the Defendant Insurance Companies' usurpation of their insureds'

causes of action and/or  collection and retention of the wrongful subrogation

constituted conversion of the class members' property;  (f) whether GEICO's,

GIECO General's and the Defendant Insurance Companies' conduct constitute

violation of MCA Sec. 33-18-201 and 242 as specified in in this Complaint; and

(g) whether GEICO's, GIECO General's and the Defendant Insurance Companies'

application of contract provisions dealing with subrogation were reasonable and

authorized  by Montana law.

     67.    The claims for breach of contract, breach of the implied contractual

covenant of good faith and fair dealing, breach of the Unfair Claim Settlement

Practices Act, and Conversion stated by Plaintiffs are typical of the corresponding

claims of the all class members.

     68.    Plaintiffs have retained experienced class action and insurance

litigation counsel and will fairly and adequately protect the interests of the class.

     69.    Prosecution of separate actions by or against individual members of

the class would create a risk of inconsistent or varying adjudications of the duties

and remedies with respect to breach of the insurance contract, the implied

contractual covenant of good faith and fair dealing, and the unfair claim settlement

practice duties and conversion alleged herein, such that class certification is

appropriate under Rule 23(b)(1), M.R.Civ.P.

70.    Adjudications with respect to individual members of the class would, as a practical matter, be dispositive of the interests of the other class members so as to substantially impair or impede their ability to protect their interests without class certification, and would create the risk of incompatible standards of conduct for defendant, such that class certification is appropriate under Rule 23(b)(1), M.R.Civ.P.

71.    GEICO, GIECO General and the Defendant Insurance Companies have engaged in a pattern  of  asserting and recovering subrogation without respect to whether their  insureds  have been made whole in a manner which is essentially identical with respect to all class members, and have acted and refused to act on grounds generally applicable to the  class thereby making appropriate final injunctive relief and/or  corresponding declaratory relief with respect to the class as a whole, such that class certification is appropriate under Rule 23(b)(2), M.R.Civ.P., and, alternatively under Rule 23(b)(3), M.R.Civ.P.

72.    The issue of punitive damages should be certified under Rule 23(b)(3) and/or Rule 23(c)(4), with  notice  and  opt-out  provided  for  the  class  members. Punitive damage assessment and recovery should be implemented by way of ancillary relief to a court-ordered return of improperly taken subrogation to the insureds who owned the claim against tortfeasors.  The actual damage caused to each member of the class will thereby be exactly quantified. In addition, the

question of "actual malice" is common to all class members and predominates.  In

the alternative, the common question as to whether the insurers; programmatic

conduct constituted actual malice should be certified as a class action with respect

to the common question pursuant to Rule 23(c)(4).

FIRST CLASS CLAIM
(Breach of Insurance Contract)

73.     Plaintiffs incorporate each allegation in the paragraphs above.

74.     Common to each insurance contract is identical language or

substantially identical language, identical mandatory policy provisions, and

identical equitable limitations to contract provisions regarding GEICO's, GIECO

General's and the Defendant Insurance Companies' rights of subrogation.

75.     The insurance contract for each class member provides that GEICO,

GIECO General and the Defendant Insurance Companies may be subrogated to

Plaintiffs' rights to recover from a third party tortfeasor and its insurer. The

contract provision allowing such subrogation would be in violation of Montana

public policy to the extent that it were construed or applied to allow subrogation

before the claimant has been made whole as described in Montana law.

Subrogation in violation of this made-whole rule violates Montana public policy

and is unenforceable regardless of any contract language providing to the contrary.

76.      GEICO's, GIECO General's and the Defendant Insurance

Companies' assertion of a subrogated right arising from an automobile accident

with a third party before the insured has been made whole for all losses and costs of recovery, such as the assertion of subrogation to Plaintiffs' cause of action against the at fault parties, and each class member, violates Montana public policy and breaches the terms of the insurance contract as conformed to the requirements of Montana law. Such subrogation also breaches the contract by depriving GEICO's, GIECO General's and the Defendant Insurance Companies' insureds of the coverage for which they paid a premium and by GEICO, GIECO General and the Defendant Insurance Companies failing to indemnify the risk they were paid to insure.

77. GEICO, GIECO General and the Defendant Insurance Companies failed and/or refused to ensure that the class members, their insureds, had been made whole before asserting and recovering subrogation, and recovered, and continued to withhold from its insureds and use for GEICO's, GIECO General's and the Defendant Insurance Companies' own benefit, subrogation to which the defendants were not entitled.

78. GEICO, GIECO General and the Defendant Insurance Companies thereby breached and continue to breach the insurance contract and policy provisions common to each class member, including that, by reimbursing itself out of the proceeds of the insureds' third party claim, each Defendant Insurance

Company has deprived each class member insured of the benefit of the coverages the insureds had contracted for and paid a premium for.

79.    As a direct and proximate result thereof, Plaintiffs and each class member have losses under GEICO's, GIECO General's and the Defendant Insurance Companies' policies in the amount of the subrogation, together with interest thereon, taken before a valid and appropriate determination that the insured had been made whole, such that Plaintiffs and each class member are entitled to declaratory, supplemental, equitable and injunctive relief prayed for in this complaint.

80.    Plaintiffs have standing to assert these claims on behalf of the class against GEICO, GIECO General, as insureds, and against the Defendant Insurance Companies pursuant to the doctrines of juridical link, aiding and abetting and tortuously interfering with contract duties and civil conspiracy.

<u>SECOND CLASS CLAIM</u>
(Breach of Implied Contractual Covenant of Good Faith and Fair Dealing)

81.    Plaintiffs incorporate each allegation in the paragraphs above.

82.    In every insurance contract in Montana including each of the class members' insurance contracts with GEICO, GIECO General and the Defendant Insurance Companies, there is an implied covenant of good faith and fair dealing.

83.    By failing to disclose to their insureds the fact of GEICO's, GIECO Generals and the Defendant Insurance Companies' subrogation or the legal

limitations on subrogation under defendants' policies, by concealing from their insureds their recovery of subrogation directly from the third party or the third party's insurer, by failing to investigate and evaluate the insured's lack of a net recovery compensating the insured for all damages necessary to make the insured whole, and by programmatically designing and implementing their subrogation policies and procedures (a) to  impair and usurp their insureds' claim against the tortfeasor, (b) to convert the proceeds of such claims to the use of GEICO, GIECO General and the Defendant Insurance Companies, and (c) to deprive their insureds of their rights to be made whole before GEICO, GIECO General and the Defendant Insurance Companies collected any subrogation, GEICO, GIECO General and the Defendant Insurance Companies deprived their insureds of the benefit of the insurance contract and breached the implied covenant of good faith and fair dealing.

84.     As a direct and proximate result of the breach of the contracts and breach of the implied covenant of good faith and fair dealing, Plaintiffs and each class member have sustained and continue to sustain losses under their rights under GEICO's, GIECO General's and the Defendant Insurance Companies' policies and their claims against the tortfeasors causing their respective automobile accidents in the amount of the subrogation, together with interest thereon, which subrogation was taken before a valid and substantiated determination that the insured had been

made whole, such that Plaintiffs and each class member are entitled to declaratory, supplemental, equitable and injunctive relief prayed for in this complaint.

THIRD CLASS CLAIM
(Unfair Claim Settlement Practices)

85.     Plaintiffs incorporate each allegation in the paragraphs above.

86.     By asserting a right to subrogation without disclosing the legal limitations on subrogation under the Plaintiffs' and the class members' policies, by concealing from their insureds their recovery of subrogation directly from the third party's insurer, by misrepresenting their claimed right to subrogation as arising from a non-existent coverage limitation, by misrepresenting the required elements of the made-whole rule including a claimed exclusion therefrom of the insureds' attorney fees, by failing to investigate and evaluate the insured's lack of sufficient recovery of all damages (net of attorney fees) necessary to make the insured whole, and/or by  programmatically designing  and implementing their subrogation policies and procedures to deprive their insureds of the benefit of their contract and their rights to be made whole before GEICO, GIECO General and the Defendant Insurance Companies collected any subrogation, GEICO, GIECO General and the Defendant Insurance Companies violated §33-18-201 (1), (4) and (6), MCA, such that Plaintiffs and each class member, as first party claimants, are entitled to declaratory, supplemental, equitable and injunctive relief to enforce the duties imposed thereby.

87.     As a direct and proximate result of such violations of §33-18-201,

MCA, Plaintiffs and each class member's rights under that statute, including the

right to accurate portrayal of the insurance contract provisions and the made-whole

rule, have been and are being impaired, and their third party causes of action and

proceeds thereon have been and are being impaired usurped and converted, such

that Plaintiffs' and each class member is entitled to declaratory, supplemental,

equitable and injunctive relief prayed for in this complaint.

FOURTH CLASS CLAIM
(Conversion)

88.     Plaintiffs incorporate each allegation in the paragraphs above.

89.      GEICO's, GIECO General's and the Defendant Insurance

Companies' acts and omissions constitute unlawful conversion of Plaintiffs' and

the class members' property right in their claims against third party tortfeasors and

proceeds of such claims., GEICO, GIECO General and the Defendant Insurance

Companies, however, assert and continue to assert control over such claims and

proceeds necessitating a determination of whether such claims and proceeds

belong to GEICO, GIECO General and the Defendant Insurance Companies or

have been converted.

90.     Plaintiffs and the class members have suffered conversion in the

amount of funds unlawfully taken by GEICO, GIECO General and the Defendant

Insurance Companies and interest thereon at the rate allowed by Montana law until

repaid, and are entitled to declaratory, supplemental, equitable and injunctive relief regarding ownership of the claim and proceeds, and return of the converted funds with interest, such that Plaintiffs and each class member are entitled to declaratory, supplemental, equitable and injunctive relief prayed for in this complaint.

FIFTH CLASS CLAIM
(Declaratory, Injunctive, and Supplemental Relief)

91.    Plaintiffs incorporate each allegation in the paragraphs above.

92.    Plaintiffs and each member of the class are interested persons under the above-described written contracts of insurance, including the specific contract provisions pertaining to subrogation and including the implied and mandatory provisions of such contracts all of which are substantially identical for all class members.  Plaintiffs and each class member are affected by the interpretation and application of such contract and policy provisions, and have a right to, and need for, a declaration of rights, duties, status, legal relations and remedies under such common contract provisions.

93.    Plaintiffs and each member of the class are further interested parties under the statutory and common law duties above-described, including (a) the right to be made whole before subrogation is pursued, (b) the right to good faith claim handling, (c) the right not to have their claims against tortfeasors (and proceeds thereof) converted to the insurer's use, (d) the right to timely and accurate disclosure of the insurer's assertion of subrogation,  and (e) the right to timely and

accurate disclosure of the basis for any assertion of a subrogation right and the limitations to subrogation under the made-whole rule, such that the Lees and each class member has a right to a declaration of rights, status, legal relations and remedies under such legal duties.

94.     Plaintiffs and each member of the class are entitled to declaratory relief including a ruling that (a) all subrogation amounts taken before the insureds' losses were accounted for and the insureds' were made whole, together with interest or earnings thereon, are and remain the property of the insured; (b) GEICO, GIECO General and the Defendant Insurance Companies subrogation taken to their own use before a valid and appropriate made whole determination had been made pursuant to Montana law constituted a conversion; and (c) GEICO, GIECO General and the Defendant Insurance Companies subrogation practices constitute a violation of the insurance contracts' implied covenants and statutory adjustment duties.

95.     Plaintiffs and each member of the class are entitled to injunctive and supplemental relief including, but not limited to,

(a) an injunction against further assertion of subrogation in contravention of Montana's "made-whole" rule;

(b) injunctive relief preventing the insurers' continued retention of wrongfully converted subrogation proceeds and wrongful earnings thereon;

(c) an order of restitution of subrogation proceeds plus interest or earnings thereon;

(d) an order requiring return, to Plaintiffs and each class member, of all subrogation, together with interest from the time the subrogation was taken, obtained by GEICO, GIECO General and the Defendant Insurance Companies, together with an order enjoining any reassertion of any subrogation right until such time if any  as GEICO, GIECO General and the Defendant Insurance Companies can and do make timely (1) appropriate disclosures of the insureds right to recover all elements of loss, including loss of use of the vehicle, diminished value of repaired vehicle and costs for recovery, and (2) an appropriate made whole investigation and determination pursuant to Montana law.

(e) an order requiring GEICO, GIECO General and the Defendant Insurance Companies to timely disclose, in advance, the insurer's intent to assert a subrogation claim, which disclosure includes a statement of the basis in the insurance policy for such assertion  and the limitations thereto under the made whole rule; and,

(f) an order from this Court enjoining GEICO, GIECO General and the Defendant Insurance Companies not to collect or retain subrogation until the

insurer has completed an investigation which provides a reasonable basis for

identifying and quantifying the amount of their insureds unrecovered losses.

(g) an order of restitution compelling GEICO, GIECO General and the

Defendant Insurance Companies to return all wrongful subrogation collected

with interest thereon at the rate allowed by Montana law;

(h)  attorney fees; and

(i)  such other  supplemental relief  as is necessary to make this Court's

declaration effective and/or is proper in law or equity.

<u>SIXTH CLASS CLAIM</u>
(Punitive Damages)

96.     Plaintiffs incorporate each allegation in the paragraphs above.

97.      GEICO's, GIECO General's and the Defendant Insurance

Companies' misrepresentations, concealment, failures to investigate and adjust and

other tortious conduct alleged herein, with respect to the programmatic pursuit of

subrogation and the impairment and conversion of their insureds' cause of action

and proceeds thereof without assuring that the insureds had been made whole, was

done with knowledge that it violated the requirements of the made-whole rule and

that the insureds would be harmed by the impairment of their third party claims

and with malice, as defined by §27-1-221, MCA, such that punitive damages

should be assessed against GEICO, GIECO General and the Defendant Insurance

Companies in an amount sufficient to punish, deter and make example GEICO's,

GIECO General's and the Defendant Insurance Companies' wrongdoing and in an amount that is proportional to the amount of subrogation recoveries improperly taken by GEICO, GIECO General and the Defendant Insurance Companies or, alternatively, that the issues of GEICO's, GIECO General's and the Defendant Insurance Companies' "actual malice" are tried as a class issue pursuant to Rule 23 (c)(4).

## SEVENTH CLASS CLAIM
(Civil Conspiracy)

98.    Plaintiffs incorporate each allegation in the paragraphs above.

99.    This Count is not included as a separate tort but rather is to describe the basis for joint and several liability of GEICO, GIECO General and the Defendant Insurance Companies for the relief sought in the class claims.

100.   The acts and omissions of GEICO, GIECO General and the Defendant Insurance Companies with respect to the concerted and programmatic assertion of subrogation with respect to all insureds constitute a civil conspiracy for the reasons set forth in Plaintiffs' corresponding individual claims stated above.

## EIGHTH CLASS CLAIM
(Aiding and Abetting)

101.   Plaintiffs incorporate each allegation in the paragraphs above.

102.   This Count is not included as a separate tort but rather is to describe the basis for joint and several liability of GEICO, GIECO General and the Defendant Insurance Companies for the conduct of its subrogation program.

103.   The acts and omissions of GEICO, GIECO General and the Defendant Insurance Companies constitute aiding and abetting each other in the conduct of its subrogation program for the reasons set forth in Plaintiffs' corresponding individual claims stated above.

<u>NINTH CLASS CLAIM</u>
(Attorney Fees)

104.   Plaintiffs incorporate each allegation in the paragraphs above.

105.    GEICO's, GIECO General's and the Defendant Insurance Companies' programmatic subrogation conduct was and is unreasonable and unjustifiable and forced the institution of this litigation to compel GEICO, GIECO General and the Defendant Insurance Companies to conform to the clear requirements of Montana law.

106.   GEICO, GIECO General and the Defendant Insurance Companies are liable for Plaintiffs' and the Class' attorney fees.

<u>PRAYER</u>

WHEREFORE, Plaintiff prays for Judgment against Defendants as follows:

<u>FOR PLAINTIFFS INDIVIDUAL CLAIMS:</u>

1.   For all contract damages described herein.

2.     For all consequential damages.

3.     For all special damages determined by the jury.

4.     For all general damages determined by the jury.

5.     For all prejudgment interest due under Montana law as restitution

and/or as damage.

6.     For assessment of punitive damages against GEICO and GIECO

General on the non-class claims in such amounts as the jury determines proper in

accordance with Montana law.

7.     For costs and disbursements in this action.

8.     For such attorney fees as may be due under Montana law.

9.     For such other and further relief as is deemed due by this Court.


## FOR THE CLASS CLAIMS:

Plaintiffs further pray on behalf of the class as follows:

10.     For declaratory rulings that;

•       Each class member is entitled to the benefit of proper application of

        Montana's made whole rule,

•       the defendant insurers must, before asserting subrogation, (a) conduct

        an investigation to substantiate a reasonable basis for quantifying each

        element of their insureds losses, deductibles and costs and attorney

fees of collection, and (b) assure that the insured is made-whole for all such losses,

• the subrogation recoveries, together with interest earnings thereon, obtained without completing the prerequisite made-whole investigation and quantification, are and remain the property of the insureds;

• The required made whole investigation and determination must be based on objective quantification of each element of damage an insured suffered, including, but not limited to, any medical expenses (past and future), lost wages, bodily injury (including but not limited to permanent impairment, pain, suffering, present and future loss of earning capacity, necessary purchases, the value of services supplied or purchased, loss of established course of life, and emotional distress), cost of repair or replacement for the damaged vehicle, loss of use for time it would take to complete repairs or obtain replacement vehicle for totaled cars, residual diminution in value of repaired vehicles, the loss of personal property in the automobile, and other property loss damages sustained in the auto accident;

• The insurers' failure to investigate and objectively quantify all such losses and assure that the insured has been made whole for all such

losses before asserting a claim as subrogee of the insureds' claim constitutes a conversion of the insured's property right, a violation of the claim handling requirements of §33-18-201, a deprivation of the benefit of the insurance contract, and a breach of the covenant of good faith and fair dealing in such insurance contract.

11.     For orders enjoining GEICO, GIECO General and the Defendant Insurance Companies (a)  to stop recovery of subrogation without first completing the  prerequisite  made-whole analysis and  assuring the insured  have  recovered all further  losses,  (b) to return  all subrogation collected before the proper made whole investigation and analysis had been completed, together with earnings thereon or interest at the rate allowed by Montana law from the date the subrogation was first collected, (c) to identify and locate each member of the class described herein, (d) to disclose to each class member of their rights  to be made whole  before subrogation attaches, (e) not to assert or reassert any subrogation claim with respect to class members' unless having first timely apprised the insured, in writing, of the intent to assert subrogation, with a disclosure of the insured's right to be made whole, and a full explication of the insurer's made whole calculation, including each of the elements of loss, and (f) an order enjoining assertion or reassertion of subrogation claims which are untimely and/or have deprived or impaired the Plaintiffs and class members of the ability to defend

against the insurers' subrogation claims in their causes of action against the automobile accident tortfeasor.

12.     For a judgment assessing punitive damages on behalf of the class in an amount sufficient to punish, deter, and make an example of GEICO's, GEICO General's and the Defendant Insurance Companies' wrongful conduct, which amount is proportional to the amount of the converted subrogation, or, alternatively, for a determination that GEICO's, GIECO General's and the Defendant Insurance Companies' programmatic conduct was "actually malicious" such that each class member is entitled to punitive damage award proportionate to the amount of subrogation secured through the wrongful program.

13.     For judgment for pre- and post-judgment interest, litigation expenses, and attorney fees.

14.     For such other, further and supplemental relief as the Court and/or jury deem appropriate for the benefit of the class, including all such further supplemental relief as may be appropriate.

15.     For such other and further legal and equitable relief as is proper in the premises.

Dated this 18th day of May, 2020.

> LERNER LAW FIRM; DANNO LAW FIRM;
> VISCOMI, GERSH, SIMPSON and JOOS, PLLP; and
> McGARVEY, HEBERLING, SULLIVAN & LACEY,
> P.C.
>
> Electronically signed by:
>
> _/s/ Brian M. Joos_____
> Co-Counsel for Plaintiff

## JURY DEMAND

Plaintiffs and the class demand trial by jury on all legal issues.

Dated this 18th day of May, 2020.

> LERNER LAW FIRM; DANNO LAW FIRM
> VISCOMI, GERSH, SIMPSON and JOOS , PLLP; and
> McGARVEY, HEBERLING, SULLIVAN & LACEY,
> P.C.
>
> Electronically signed by:
>
> _/s/ Brian M. Joos_____
> Co-Counsel for Plaintiff