IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| JAMES LEE CONSTRUCTION, INC., et al., | CV 20–68–M–DWM |
| Plaintiffs, | |
| v. | OPINION & ORDER |
| GOVERNMENT EMPLOYEES INSURANCE COMPANY, et al., | |
| Defendants. | |

James Lee Construction, Inc. and husband and wife James and Tracy Lee (collectively "Lees") represent a putative class challenging the subrogation practices of GEICO and related entities (collectively "GEICO"). GEICO seeks to dismiss for lack of standing, lack of personal jurisdiction, and failure to state a claim. (Doc. 11.) The motion is granted in part.

### BACKGROUND

On August 5, 2019, James Lee was in a car accident caused by another driver. (Doc. 4 at ¶ 7.) He was injured and the Lees' vehicle was totaled. (*Id.* at ¶¶ 7, 22.) At the time, the Lees were insured by GEICO and GEICO General. (*Id.* at ¶¶ 2, 19–20.) The at-fault driver was insured by The General Insurance Company with policy limits of $25,000 per person and $50,000 per occurrence for bodily injury and $20,000 for property damage. (*Id.* at ¶ 7.)

1

After the accident, the Lees received policy limits of $25,000 from the at-fault driver's bodily injury coverage and an unspecified amount from GEICO and GEICO General under their own medical payment coverage. (*Id.* at ¶¶ 7, 26.) They also received $3,156.65 from the at-fault driver's insurer and at least $14,194.00 from GEICO and GEICO General for property damage. (*Id.*) However, the Lees allege that they suffered at least $24,660.18 in property damage, including $19,124.90 for the total loss of their vehicle, $2,586.72 for the loss of use of the vehicle, and $2,948.56 for damage to the vehicle's contents. (*Id.* at ¶ 7.) They also claim damages for the cost of a rental vehicle, future medical expenses, loss of income, loss of consortium, and attorneys' fees. (*Id.* at ¶ 22.) Little detail is provided on the status of the Lees' claim against the at-fault driver, except that it has not settled. (*Id.* at ¶¶ 7, 22.) However, GEICO and GEICO General have already subrogated $14,194.00 from the at-fault driver's insurer, which the Lees claim will prevent them from fully recovering. (*Id.* at ¶ 26.)

On April 3, 2020, the Lees filed suit in state court on behalf of themselves and a putative class challenging the subrogation practices of GEICO, GEICO General, and other GEICO entities with which they do not hold policies. (Doc. 3.) The case was removed to this Court on May 12, 2020. (Doc. 1.) On May 18, the Lees filed an Amended Complaint for failure to pay underinsured motorist ("UIM") coverage under their insurance policy (Count One), violations of the

2

Montana Unfair Trade Practices Act (Count Two), breach of contract and the implied covenant of good faith (Count Three), and conversion (Count Four). (Doc. 4.) They allege the GEICO entities with which they did not have an insurance policy are liable on a civil conspiracy theory (Count Five) and aiding and abetting theory (Count Six). (*Id.*) They also bring class claims (Count Seven). (*Id.*) The GEICO entities moved to dismiss on June 1, 2020. (Doc. 11.)

## ANALYSIS

GEICO seeks dismissal on three grounds: (1) the Lees do not have standing, (2) the Court lacks personal jurisdiction over the non-contracting GEICO entities, and (3) the Lees failed to state plausible claims for relief.

**I.   Standing**

GEICO seeks to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. However, standing is jurisdictional, so the motion is construed as a Rule 12(b)(1) motion for lack of jurisdiction. *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). To have standing, a "plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). The plaintiff has the burden to establish these elements. *Id.* Where, as here, the defendant contends that the complaint is facially insufficient to establish standing, all allegations are

3

accepted as true and all reasonable inferences are drawn in favor of the plaintiff. *Leite v. Crane*, 749 F.3d 1117, 1121 (9th Cir. 2014).

GEICO first argues that the Lees failed to show injury in fact. "To establish injury in fact, a plaintiff must show that he or she suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Spokeo, Inc.*, 136 S. Ct. at 1548 (internal quotation marks omitted). "An injury is imminent if the threatened injury is certainly impending, or there is a substantial risk that the harm will occur." *Mont. Envtl. Info. Ctr. v. Stone-Manning*, 766 F.3d 1184, 1189 (9th Cir. 2014) (internal quotation marks omitted).

Here, the Lees allege that GEICO's subrogation impaired their ability to recover from the at-fault driver by depleting the available insurance coverage. (Doc. 4 at ¶¶ 23, 24, 27.) GEICO does not contest the Lee's concrete interest in their recovery from the at-fault driver. Indeed, Montana law recognizes an insured's right to be "made whole" before an insurer is entitled to subrogation. *Van Orden v. United Servs. Auto. Ass'n*, 318 P.3d 1042, 1045–46 (Mont. 2014); *Swanson v. Hartford Ins. Co. of Midwest*, 46 P.3d 584, 587 (Mont. 2002). However, GEICO contends that the alleged harm to that interest is too speculative because it is "impossible to know" whether the Lees will fully recover until after their claim against the at-fault driver is resolved. (Doc. 12 at 16.) That is not the

standard. The Lees have alleged damages in excess of the at-fault driver's remaining coverage. (Doc. 4 at ¶ 7.) Paired with the reasonable inference that the subrogation weakens their litigation position against the at-fault driver and her insurer, this is enough to establish a "substantial risk" that the Lees will not be made whole. *See Mont. Envtl. Info Ctr.*, 766 F.3d at 1189.

GEICO also makes a cursory argument that any harm to the Lees is not traceable to its conduct. But had GEICO not subrogated $14,194.00, the Lees could pursue that amount from the at-fault driver's insurer. Concerns about double recovery and the amount to which the Lees are ultimately entitled are merits issues. At this stage, the Lees have shown that GEICO's conduct poses a substantial risk to their interest in being made whole.

Finally, GEICO argues that public policy disfavors allowing the Lees' claims to go forward on the merits. Specifically, GEICO contends that the Lees' position disincentivizes insurers from making payments up front and treats subrogation differently from offsets. But when sitting in diversity, federal courts must apply the law of the forum state. *Med. Lab. Mgmt. Consultants v. Am. Broad. Cos.*, 306 F.3d 806, 812 (9th Cir. 2002). And GEICO's policy concerns have already been rejected in Montana, where the insured's right to be made whole takes precedence over the insurer's right to subrogate. As the Montana Supreme Court has made clear, "[w]hen the sum recovered by the Insured from the

5

Tortfeasor is less than the total loss and thus either the Insured or the Insurer must to some extent go unpaid, *the loss should be borne by the insurer[,] for that is a risk the insured has paid it to assume.*" *Van Orden*, 318 P.3d at 1045 (quoting *Skauge v. Mtn. Sts. Tel. & Tel. Co.*, 565 P.2d 628, 632 (Mont. 1977)) (emphasis and second alteration in original).

## II. Personal Jurisdiction

GEICO also seeks to dismiss the GEICO entities with which the Lees do not hold insurance policies for lack of personal jurisdiction under Rule 12(b)(2). "Where a defendant moves to dismiss a complaint for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that jurisdiction is appropriate." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). "Where, as here, the motion is based on written materials rather than an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts." *Id.* (internal quotation marks omitted). Although the plaintiff "cannot simply rest on the bare allegations of its complaint," uncontroverted allegations are taken as true and conflicting affidavits are resolved in the plaintiff's favor. *Id.* (internal quotation marks and citation omitted).

"Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons." *Picot v. Weston*, 780 F.3d 1206, 1211 (9th Cir. 2015) (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014)). In Montana, courts

apply a two-step test to determine whether they have personal jurisdiction over a nonresident defendant. *Milky Whey, Inc. v. Dairy Partners, LLC*, 342 P.3d 13, 17 (Mont. 2015). First, courts consider whether personal jurisdiction exists under Rule 4(b)(1) of the Montana Rules of Civil Procedure. Rule 4(b)(1) subjects parties to general jurisdiction if they are "found within the state of Montana" and to specific jurisdiction "as to any claim for relief arising from the doing personally, or through an employee or agent, of any" of the enumerated acts listed in 4(b)(1)(A) through (G). *Id.*

Second, courts consider whether the exercise of personal jurisdiction is consistent with due process. *Id.* Under the Fourteenth Amendment's due process clause, general jurisdiction over out-of-state corporations is proper "when their affiliations with the State are so continuous and systematic as to render them essentially at home in the forum State." *Daimler AG*, 571 U.S. at 127 (internal quotation marks omitted). A court may exercise specific jurisdiction over an out-of-state corporation when a claim arises out of the corporation's contacts with the forum state. *Walden v. Fiore*, 571 U.S. 277, 284 (2014). Under the three-part test for specific jurisdiction,

> (1) the defendant must either purposefully direct his activities toward the forum or purposefully avail himself of the privileges of conducting activities in the forum; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1068 (9th Cir. 2017) (internal quotation marks and alteration omitted). The plaintiff has the burden on the first two prongs. *Id.* The defendant must then "present a compelling case that the exercise of jurisdiction would not be reasonable." *Id.* at 1068–69 (internal quotation marks omitted).

At the first step here, the Lees contend that personal jurisdiction exists under Rule 4(b)(1)(A), which confers specific jurisdiction over claims arising out of "the transaction of any business within Montana," and Rule 4(b)(1)(B), which confers specific jurisdiction over claims arising out of "the commission of any act resulting in accrual within Montana of a tort action." However, GEICO submitted a declaration from Sarah Davis, an underwriting supervisor who has been with the company for 23 years, affirming that three of the defendants here—GEICO Advantage, GEICO Choice, and GEICO Marine—"do not write/provide auto insurance in Montana or subrogate any claims." (Doc. 12-3 at ¶¶ 2–3.) The Lees have not offered any evidence contradicting Davis's declaration. Instead, they argue that Davis only establishes that these entities are "not currently" operating in Montana and contend that "upon a demonstration of non-participation in Montana subrogation over the past eight years, the companies so demonstrating should be dismissed." (Doc. 13 at 26–27.) But it is the Lees' burden to demonstrate that jurisdiction is proper. *Schwarzenegger*, 374 F.3d at 800. And if they are unable to

8

show that GEICO Advantage, GEICO Choice, and GEICO Marine operated in Montana, then they likely cannot show that those entities are subject to personal jurisdiction under Rule 4(b)(1).

But this Court lacks personal jurisdiction over all the non-contracting defendants, not just the three specified above, for a more fundamental reason: The Lees have not shown that their claims arise from those entities' conduct in Montana. The Lees do not allege that the non-contracting defendants participated in the handling of their insurance claim or the decision to subrogate. Rather, they allege that the non-contracting defendants are liable for "aiding and abetting" the wrongful subrogation and "civil conspiracy." (Doc. 4 at ¶¶ 50–55.) Montana courts have not addressed whether an alleged conspiracy establishes jurisdiction under Rule 4(b)(1). But even if sufficient under state law, the conspiracy theory of personal jurisdiction, at least as pled in this case, fails under the due process clause.

The Ninth Circuit has neither recognized nor rejected the constitutional validity of basing personal jurisdiction on an alleged conspiracy, though it seems skeptical of the concept. The only published opinion on the issue concluded that personal jurisdiction under the theory does not exist where the plaintiff "alleges no facts to even suggest a conspiracy." *Underwager v. Channel 9 Austl.*, 69 F.3d 361, 364 (9th Cir. 1995). A later unpublished decision acknowledged "a great deal of doubt surrounding the legitimacy of this conspiracy theory of personal

jurisdiction," but like in *Underwager*, ultimately concluded that the allegations of conspiracy were too conclusory. *Chirila v. Conforte*, 47 F. App'x 838, 842–43 (9th Cir. 2002). Similarly, in *Steinke v. Safeco Insurance Co. of America*, this Court reasoned that it lacked personal jurisdiction because the plaintiff had "not specifically alleged a conspiracy." 270 F. Supp. 2d 1196, 1200 (D. Mont. 2003). Among courts following a similar approach, a general rule has emerged that, assuming a conspiracy theory of personal jurisdiction is viable, to comport with due process "a plaintiff must set forth non-conclusory allegations that the defendant was a member of a conspiracy, that the defendant's or his co-conspirator's acts in furtherance of the conspiracy caused harm in the forum, and that the conspiracy individually targeted a known forum resident." *In re W. States Wholesale Nat. Gas Antitrust Litig.*, 605 F. Supp. 2d 1118, 1140 (D. Nev. 2009); *see also UMG Recordings, Inc. v. Global Eagle Entm't, Inc.*, No. CV 14-3466, 2015 WL 12752879, at *9 (C.D. Cal. July 2, 2015) ("Even if the theory is viable, to comply with traditional notions of fair play and substantial justice, it must be based on more than conclusory allegations of the existence of a conspiracy."); *Brown v. 140 NM LLC*, No. 17-cv-5782, 2019 WL 118425, at *5 (N.D. Cal. Jan. 7, 2019) (collecting cases).

    Here, the allegations of a conspiracy are too conclusory to establish personal jurisdiction over the GEICO entities with which the Lees do not hold insurance

policies. The Amended Complaint merely repeats the general allegation that the defendants acted "jointly" or "engaged in concerted action" to assert wrongful subrogation claims. But the "statement that '[defendants] have been acting in concert' is, by itself, merely conclusory and therefore not entitled to an assumption of truth." *See Krypt, Inc. v. Ropaar*, No. 19-cv-3226-BLF, 2020 WL 32334, at *5 (N.D. Cal. Jan. 2, 2020). And that same allegation is reiterated nine times without any detail about how the conspiracy commenced or was conducted. (*See* App'x to Order.)

Only a single paragraph of the Amended Complaint alleges any concrete action by the defendants:

> In addition to the adjustment of Plaintiffs' claims within the state of Montana, Defendant Insurance Companies also jointly adjust and assert automobile subrogation claims in the State of Montana by (a) working together to design the adjustment procedures and subrogation assertion strategies knowingly designed to deprive insureds of their made whole rights; (b) jointly employing claims adjusters under a single jointly administered employment arrangement; (c) jointly training these adjusters to utilize for all such companies the same procedures in adjusting, including the procedures for collection of subrogation arising from damages suffered by Montana insureds; (d) jointly managing and directing these adjusters on specific procedures for asserting subrogation, and adjusting and evaluating subrogation rights, including the procedures for investigation and evaluation of the insureds losses and collection of subrogation arising from damages suffered by Montana insureds; (e) jointly compensating the adjusters for such conduct, and (f) jointly paying to such adjusters bonuses reflecting common profitability experienced by the collective companies through the implementation of the jointly developed and administered adjustment and subrogation strategies.

(Doc. 4 at ¶ 10.) But with respect to the alleged conspiracy, it does no more than assert that the defendants acted "jointly." It "does not allege the conspirators made an agreement specifically regarding [Montana] or its residents," as required to establish personal jurisdiction based on a conspiracy. *In re W. States*, 605 F. Supp. 2d at 1140.

What's more is that these are boilerplate allegations, repeated verbatim from a complaint filed by the same counsel against other insurance companies. *See, e.g.*, *Johnson v. St. Farm Mut. Auto. Ins. Co.*, CV 20-55-M-DWM (D. Mont. May 6, 2020). Nearly the entire pleading is recycled, with counsel barely bothering to use the party names, instead opting for the generic "Plaintiffs" and "Defendant Insurance Companies." Nonspecific allegations that can be, and have been, swapped from case to case are insufficient to support personal jurisdiction under a conspiracy theory. Such a practice does not comport with the "traditional notions of fair play and substantial justice" embodied in the due process clause. *Walden*, 571 U.S. at 283 (internal quotation marks omitted). The non-contracting GEICO entities are dismissed for lack of personal jurisdiction. The conspiracy and aiding and abetting claims, pled only as theories of liability are also dismissed.

### III. Failure to State a Claim

Finally, GEICO seeks to dismiss the remaining claims under Rule 12(b)(6). To survive a Rule 12(b)(6) motion, a claim must allege "sufficient factual matter,

accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Dismissal is appropriate, however, "where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory." *L.A. Lakers, Inc. v. Fed. Ins. Co.*, 869 F.3d 795, 800 (9th Cir. 2017) (internal quotation marks omitted).

### A.  UIM Claim

GEICO's motion makes clear that it is not seeking to dismiss the Lees' UIM claim. (*See* Doc. 11 at 2 (seeking "an order dismissing all claims alleged in Plaintiffs' First Amended Complaint except their Underinsured Motorist claim").) Nonetheless, GEICO argues that the claim should be dismissed because the Lees "omit key facts." (Doc. 12 at 28.) GEICO's argument relies on facts outside the pleadings, which is improper on a Rule 12(b)(6) motion. *Lee v. City of L.A.*, 250 F.3d 668, 688–89 (9th Cir. 2001); Fed. R. Civ. P. 12(d). The motion to dismiss is denied as to the UIM claim.

### B.  Unfair Trade Practices Act Claim

GEICO seeks to dismiss the Unfair Trade Practices Act claim to the extent it is based on the failure to advance-pay medical expenses. The Lees concede that

*Mears v. Safeco Insurance Co. of Illinois*, 888 F. Supp. 2d 1048 (D. Mont. 2012), forecloses their claim based on medical expenses that were covered by the at-fault driver's insurance. The motion to dismiss is granted on those limited grounds.

### C.  Contract Claims

GEICO argues that the Lees cannot maintain a breach of contract or implied covenant of good faith claim against the non-contracting defendants. Because those defendants are dismissed for lack of personal jurisdiction, this argument is unnecessary to consider. GEICO also argues that the Lees cannot maintain a claim for tortious breach of the implied covenant. Because the Lees do not contest that point, the motion to dismiss is granted on those limited grounds.

### D.  Conversion

GEICO argues that the Lees' conversion claim is barred by the Unfair Trade Practices Act preemption provision, which provides that

> [a]n insured who has suffered damages as a result of the handling of an insurance claim may bring an action against the insurer for breach of the insurance contract, for fraud, or pursuant to this section, but not under any other theory or cause of action.

Mont. Code Ann. § 33-18-242(3). The Lees respond that the alleged wrongful subrogation does not qualify as the handling of an insurance claim and is therefore outside the statute. The Lees' argument does not withstand scrutiny. Based on the allegations in the Amended Complaint, the subrogation at issue was part and parcel of the Lees' claim to GEICO after the accident. Indeed, the subrogation only

occurred because the Lees submitted a claim to GEICO under their property damage coverage. (*See* Doc. 4 at ¶¶ 3, 26.)

Further, the Lees' argument is inconsistent with Montana law. Montana allows insurance companies to subrogate when reasonable "to prevent duplicate payments for the same element of loss." Mont. Code Ann. § 33-23-203(2). However, before exercising that right, an insurance company must determine whether the insured has been made whole. *Van Orden*, 318 P.3d at 1045–46. By itself, then, subrogation does not convert the insured's recovery; rather, only *wrongful* subrogation can result in conversion.

The Amended Complaint recognizes this. Count 4 alleges that the subrogation only amounts to conversion in this case "because the insurer has failed (a) to make an investigation and determination of all of the losses of the insured, and (b) to assure that the Plaintiffs have been made whole for all their damages as recognized by Montana law." (Doc. 4 at ¶ 46.) It goes on to allege that GEICO had "not attempted to investigate, evaluate or quantify the amount of Plaintiffs' losses which are outside of the coverage's [sic] provided by GEICO and GEICO General." (*Id.* at ¶ 47.) The failure to conduct a reasonable investigation also forms the basis, in part, of the Lees' Unfair Trade Practices Act claim. (*Id.* at ¶¶ 28, 37.) Ultimately, that the same conduct underlies both claims underscores that the Unfair Trade Practices Act preempts the conversion claim.

## CONCLUSION

IT IS ORDERED that GEICO's motion to dismiss (Doc. 11) is GRANTED IN PART as follows:

1) The non-contracting GEICO entities are dismissed for lack of personal jurisdiction. The civil conspiracy (Count Five) and aiding and abetting (Count Six) claims are dismissed.

2) The Unfair Trade Practices Act claim (Count Two) is dismissed to the limited extent it is based on the failure to advance pay medical expenses.

3) The breach of the implied covenant claim (Count Three) is dismissed to the limited extent it is based on a tortious breach.

4) The conversion claim (Count Four) is dismissed.

The motion is DENIED in all other respects.

The Clerk of Court is directed to update the caption to reflect that GEICO and GEICO General are the only remaining defendants.

DATED this 11th day of August, 2020.

12:09 P.M.

Donald W. Molloy, District Judge
United States District Court