IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| JAMES LEE CONSTRUCTION, INC., a Montana Corp., JAMES B. LEE, and TRACY D. LEE, husband and wife,<br><br>               Plaintiffs,<br><br>vs.<br><br>GOVERNMENT EMPLOYEES INSURANCE COMPANY, et al.,<br><br>               Defendants. | CV 20–68–M–DWM<br><br><br>OPINION<br>and ORDER |

Plaintiffs James Lee Construction, Inc., and husband and wife James and Tracy Lee (the "Lees") represent a putative class (collectively "Plaintiffs") challenging the subrogation practices of Defendants GEICO and related GEICO entities (collectively "GEICO"). There are seven motions pending.

**ANALYSIS**

This order addresses four of the pending motions, specifically: (1) GEICO seeks to limit the scope of Plaintiffs' Rule 30(b)(6) deposition notices, (Doc. 61); (2) Plaintiffs seek to prohibit GEICO from claiming Plaintiffs' counsel Evan Danno is a necessary witness and from taking his deposition, (Doc. 67); (3) Plaintiffs seek to compel discovery responses regarding the GEICO entities'

1

subrogation practices, (Doc. 76); and (4) Plaintiffs seek leave to file certain

documents in support of their pending motion for class certification in the public

record, (Doc. 71).  The motions are addressed in turn.

## I.      Plaintiffs' Rule 30(b)(6) Deposition Notices

GEICO first seeks to either forbid or limit the scope of Plaintiffs' Notices of

30(b)(6) Depositions ("Notices") under Rule 26(c)(1) of the Federal Rules of Civil

Procedure.  (Doc. 61; *see* Doc. 62-1 (notices).)  GEICO argues that despite

attempts to collectively agree on the relevant topics, (*see* Doc. 62 at 2 n.1), "[t]he

Notices, as written, are unduly burdensome, overbroad, vague and confusing, and

amount to an impermissible memory test on more than fifty-five (55) topics per

Defendant, including subtopics," (*id.* at 3).  In response, Plaintiffs argue that

GEICO can object to certain questions during the deposition itself and points out

that GEICO waited until 33 days after it received the Notices—and nine days

before the scheduled depositions—to provide the "blanket" objections it now

raises.  (Doc. 66 at 4.)  Ultimately, GEICO's motion is partially well-taken.

### A.      Process for Challenging Scope of 30(b)(6) Notice

The parties first dispute whether a protective order is the correct process for

challenging the scope of a Rule 30(b)(6) notice or whether such objections can be

raised at the time of the examination.  "Rule 30(b)(6) requires an organization

subject to proper notice to produce a witness who can answer questions about the

subject matter in the deposition notice." *Guinnane v. Dobbins*, 479 F. Supp. 3d 989, 994 (D. Mont. 2020). This means that "corporate parties have an obligation to present witnesses who are capable of providing testimony on the noticed topics regardless of whether the information was in the witness's personal knowledge, provided that the information is reasonably available to the corporation." *Memory Integrity, LLC v. Intel Corp.*, 308 F.R.D. 656, 661 (D. Or. 2015). Given this burden, the scope of a 30(b)(6) notice plays an important role in the preparation of the witness, which necessarily occurs prior to the deposition itself. A designee cannot simply appear for a 30(b)(6) deposition not prepared to answer questions within a noticed topic area because the company believed those topics exceeded the scope of the rule.

While Plaintiffs correctly note that Rule 30(c)(2) permits objections during the examination, that rule further states that "the examination still proceeds" despite an objection. If a witness is not prepared to answer a question, such examination cannot proceed as contemplated by the rule. But Rule 26(c) provides that "a party or any person from whom discovery is sought may move for a protective order." Fed. R. Civ. P. 26(c)(1). And a court "may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." *Id.* A motion for a protective order,

rather than objections during a deposition, is therefore the appropriate mechanism for such a challenge. *See Guinnane*, 479 F. Supp. 3d at 995.

## B.      30(b)(6) Deposition v. Interrogatory

The parties also dispute whether Rule 30(b)(6) depositions or interrogatories provide the appropriate means for obtaining the information sought by Plaintiffs. As argued by Plaintiffs, the simple fact they can obtain the information by other means of discovery does not prohibit them from doing so through a 30(b)(6) deposition. *See Murphy v. Kmart Corp.*, 255 F.R.D. 497, 506–07 (D.S.D. 2009) ("Producing documents and responding to written discovery is not a substitute for providing a thoroughly educated Rule 30(b)(6) deponent."). That said, Plaintiffs' Notices, just like other discovery requests, are subject to the proportionality principle that underlies all civil discovery. *See* Fed. R. Civ. P. 26(b)(1).

## C.      Legal Analysis

GEICO argues that many of Plaintiffs' requests call for the designees to opine on complex legal concepts on behalf of the corporation, specifically as it relates to subrogation and Montana's made-whole rule. GEICO is correct that

> it is important to distinguish between the use of a Rule 30(b)(6) designee's comments as to ultimate legal conclusions as contrasted with statements to establish background facts: the testimony of a Rule 30(b)(6) deponent does not absolutely bind the corporation in the sense of a judicial admission, but rather is evidence that, like any other deposition testimony, can be contradicted and used for impeachment purposes. The Rule 30(b)(6) testimony also is not binding against the organization in the sense that the testimony can be corrected, explained

and supplemented, and the entity is not "irrevocably" bound to what the
fairly prepared and candid designated deponent happens to remember
during the testimony.

*Snapp v. United Transp. Union*, 889 F.3d 1088, 1104 (9th Cir. 2018) (internal

quotation marks omitted).  Thus, while this is not grounds to strike or limit the

scope of the 30(b)(6) deposition, Plaintiffs' later use of such testimony is limited.

*See also Calvary Chapel Bible Fellowship v. Cty. of Riverside*, 948 F.3d 1172,

1176–77 (9th Cir. 2020).

### D.    Specific Topics

Plaintiffs' 30(b)(6) notices contain 24 separate topics with numerous

subtopics.  (*See* Doc. 62-1.)  They are discussed in turn.

#### 1.    Topics 1–16

GEICO first argues that Plaintiffs improperly demand that the 30(b)(6)

designees be prepared to specifically identify the "identity and location" of all

written materials relevant to GEICO's Property Recovery Unit ("PRU") and its

subrogation practices and procedures as well as "all facts" supporting GEICO's

claims and defenses.  GEICO is especially concerned about the breadth of those

topics because Plaintiffs have indicated they would move to exclude any evidence

the 30(b)(6) witnesses fail to identify or reference.  In response, Plaintiffs argue

that they seek only the identity and location of directives and instructions GEICO

"contends it *actually applies* to comply with Montana's made whole rule."  (Doc.

66 at 9.)  Given that concession, GEICO's objection on these grounds is sustained and Plaintiffs' Notices are limited in two ways.  First, Plaintiffs are bound by their proposed interpretation of policies and procedures *actually used* by GEICO in investigating and subrogating claims in Montana.  GEICO appears willing to provide this very witness insofar as it states it will produce a witness to testify generally regarding investigation standards and processes used when examining claims and subrogation in Montana.  (*See* Doc. 62-2 at 6.)  Second, Plaintiffs are not permitted to use the Notices to curtail GEICO's ability to subsequently supplement discovery consistent with Rule 26.

### 2.     Topics 17–19

In Topics 17 through 19, Plaintiffs seek information on the corporate relationships and allocation of subrogation recoveries between the GEICO entities. GEICO challenges these topic areas on factual grounds, asserting that there is no such information because the GEICO entities do not share recoveries.  GEICO further argues that it will provide a witness that can testify to the financial practices—i.e., shared employees but not shared recoveries—of the PRU.  Even though GEICO is correct that it cannot prepare its designees to testify to the factual basis of procedures and practices it does not engage in, that answer can be appropriately given in the context of the deposition itself.  And it seems that the

designee proffered by GEICO is sufficiently prepared to address this issue. As a result, this objection is overruled.

### 3.   Topic 20

GEICO objects to the language seeking information related to the "full corporate and business entity structure" of GEICO affiliates as vague and confusing. This objection is overruled. While GEICO's corporate structure is arguably a broad topic, GEICO must prepare its witness to discuss how each defendant GEICO entity is organized and the relationships between them.

### 4.   Topics 21 and 22

GEICO objects to Topics 21 and 22 to the extent they demand a witness identify the specific "mechanism" and "terms" related to how expenses and recoveries are allocated between the GEICO entities. GEICO has offered to provide a witness that can testify to this general subject matter but objects to the extent that witness would be required to have detailed knowledge of complex and proprietary cost allocation formulas. That objection is overruled. How the GEICO entities share the PRU and how the PRU operates are central issues in this case. In light of that fact, the implication that cost sharing and recovery allocation are too complex for GEICO's designee to explain is not compelling.

### 5.   Topics 23 and 24

Topics 23 and 24 regard GEICO's finances, including its general information as well as the amount of subrogation recoveries obtained during the class period.  According to GEICO, these requests are overly burdensome and not proportional to the needs of the case.  GEICO's objection is partially correct. While GEICO's designee must be prepared to answer pointed questions about its assets, liabilities, and subrogation recoveries, Plaintiffs' catch-all request for "any other information of financial affairs or financial condition" is overbroad when considering the scope of GEICO's operations.

### E.   Plaintiffs' Request to Prohibit Witness Affidavits

In the final page of Plaintiffs' response, they "request that the Court rule that, until the Rule 30(b)(6) depositions have been completed, the defendant corporations are estopped from presenting, by way of *witness* affidavits, or any factual contention that is within the topics of the deposition notices."  (Doc. 66 at 14.)  This request appears to be tied to the fact that Plaintiffs were not able to take the requested 30(b)(6) depositions prior to filing their motion for class certification.  But GEICO is understandably perplexed by this request.  While Plaintiffs are correct that it would be unfair to deny their motion for class certification based on corporate evidence cited by GEICO when Plaintiffs have not had the opportunity to depose its designees, the proper course of action is for Plaintiffs to seek to supplement their motion once the 30(b)(6) depositions occur.

### F.     Conclusion

Ultimately, because GEICO's objections to Topics 1–16 and part of 24 are sustained, limitations will be placed on the scope of Plaintiffs' discovery pursuant to Rule 26(c)(1)(D).  Discovery on Topics 1–16 is limited to procedures and policies *actually applied* in GEICO's subrogation of claims in Montana and GEICO is permitted to supplement discovery on those topic areas consistent with Rule 26.  Discovery on Topic 24 is narrowed to remove Plaintiffs' vague "catch-all" request for additional financial information.  Plaintiffs' request to prohibit witness affidavits is denied at this juncture.  The parties shall each bear their own fees and costs.

## II.     Plaintiffs' Motion for a Protective Order re Danno

In the second motion at issue, Plaintiffs seek a protective order prohibiting GEICO from (1) claiming that Plaintiffs' counsel Evan F. Danno is a necessary witness in the case and (2) taking Danno's deposition.  (Doc. 67.)  GEICO insists Danno is a necessary fact witness based on his conduct and knowledge of Plaintiffs' claims.  While GEICO has the better argument, Plaintiffs have not waived attorney-client privilege or work product protections.

### A.     Necessary Witness

"Matters of attorney disqualification are governed by state law and applicable disciplinary rules." *Timlick v. Liberty Mut. Ins. Co.*, 2019 WL 4934782,

at *1 (D. Mont. Oct. 7, 2019).  Pursuant to Rule 3.7 of the Montana Rules of

Professional Conduct,

> a) A lawyer shall not act as advocate at a trial in which the lawyer is
> likely to be a necessary witness unless:
> (1) the testimony relates to an uncontested issue;
> (2) the testimony relates to the nature and value of legal services
> rendered in the case; or
> (3) disqualification of the lawyer would work substantial hardship on
> the client.

A necessary witness is one whose "testimony is both admissible and unavailable

by other means." *In re Marriage of Perry*, 293 P.3d 170, 178 (Mont. 2013).

"Because Rule 3.7 can be invoked for tactical advantage, delay or other improper

purposes, the movant must make the showing that an attorney is likely to be a

necessary witness with specificity." *Timlick*, 2019 WL 4934782, at *2 (internal

quotation marks omitted).  The party seeking disqualification bears the burden of

showing it is necessary.  *Id.*  "Courts within this district have recognized that an

attorney in a bad faith case may be subject to disqualification if the attorney also

represented the plaintiff in the underlying suit, and is likely to be a necessary

witness in the subsequent action."  *Id.* (quoting *Katica v. Allstate Fire & Cas. Ins.

Co.*, 2018 WL 3475479, at *1 (D. Mont. July 19, 2018)).

   Local Rule 83.5 similarly limits the actions of an advocate-witness lawyer:

"If an attorney representing any party is examined as a witness in a case and gives

testimony on the merits, the attorney may not argue the merits of the case, either to

the court or jury, except by permission of the court, and as limited by the court."
Local Rule 83.5 does not apply to pretrial advocacy, however, and "the Court has
typically applied it narrowly to prohibit an attorney who testifies at trial from
making the closing argument." *Id.*

Here, Danno represented Plaintiffs in their underlying claims against GEICO
and the at-fault driver's insurance company.  Because Plaintiffs do not dispute the
relevance of Danno's information, the question is whether the substance of his
information is available through the stipulated correspondence.  It is not given the
parties' divergent views of Danno's actions.  Plaintiffs allege that Danno is not a
necessary witness because the only discoverable information he has was already
produced—namely, limited correspondence from his office, the attorney fee
agreement with his clients, and copies of the settlement checks and disbursal sheets
of settlement funds—and Plaintiffs have stipulated to the authenticity and
foundation of those documents.  GEICO, on the other hand, provides ten pages of
factual assertions outlining Danno's extensive involvement in the handling of
Plaintiffs' claims both vis-à-vis GEICO and with the insurer of the at-fault driver.
(*See* Doc. 75 at 7–17.)  In response, Plaintiffs essentially argue that GEICO is
overstating Danno's involvement, either arguing that his paralegal, not Danno
himself, engaged in the conversations at issue or that "GEICO is fabricating these
alleged conversations with Danno."  (Doc. 84 at 5; *see also id.* at 6 ("GEICO's

11

claims about its conversations with Danno are false."), 7 ("As to oral communications with GEICO, there were none.").)  Thus, the parties not only disagree over whether the correspondence speaks for itself (contrary to Plaintiffs' earlier position), but also about whether some communication occurred at all. Danno is "clearly the most capable witness" to address this discrepancy.  *Timlick*, 2019 WL 4934782, at *3 (internal quotation marks and alteration omitted).

As a result, GEICO has met its burden of showing with specificity that Danno is a necessary witness at trial, which means disqualification is warranted unless Plaintiffs can show one of the three exceptions to Rule 3.7(a) applies.  *See In re Marriage of Perry*, 293 P.3d at 178.  Here, the testimony certainly relates to a contested issued and goes beyond the nature and value of legal services in the case. As a result, Plaintiffs must show "disqualification of the lawyer would work substantial hardship on the client."  They cannot.  Plaintiffs have five attorneys in addition to Danno.  And while Danno will be prohibited from arguing the case, *see* L.R. 83.5, he can still help with pretrial preparation and motions practice.

## B.    Work-Product and Attorney-Client Privilege Protections

GEICO further argues that because Plaintiffs have injected Danno's conduct into this litigation, they have waived privilege or work product protections.  In so arguing, GEICO relies on *High Country Paving, Inc. v. United Fire & Casualty Co.*, 414 F. Supp. 3d 1299, 1305–06 (D. Mont. 2019).  *High Country Paving*

recognized that "mere reference to privileged reports is not enough to waive the attorney-client privilege," but found that the protections were waived when a party "place[d] its attorneys' letters and valuations of the underlying case directly at issue" and could not therefore "refuse to disclose their basis." *Id.* (citing *Palmer by Diacon v. Farmers Ins. Exch.*, 861 P.2d 895, 908 (Mont. 1993)). But, unlike *High Country*, Plaintiffs do not appear to be relying on Danno's testimony to argue their theory of the case or challenge GEICO's valuation of the claims. Rather, it seems that Plaintiffs would relegate Danno's correspondence to the status of a pro forma demand for payment under Plaintiffs' policy. As a result, GEICO has not shown that Plaintiffs' have waived either protection at this point.

### C.     Deposition

Plaintiffs further argue that even if Danno is a necessary witness, GEICO still must show that deposing Danno is necessary. Yet GEICO persuasively argues that a deposition is appropriate for a couple reasons. First, the information sought by GEICO is not available elsewhere. In Plaintiffs' reply in support of the present motion, they repeatedly state that Danno had no oral communication with GEICO despite GEICO's allegation to the contrary; only Danno can resolve this factual dispute. (*See also* Doc. 84 at 9 (admitting that Danno had "a brief non-substantive conversation with a second adjuster").) Second, Plaintiffs arguably have, through the email correspondence of one of their other attorneys, Allan McGarvey, agreed

to such a deposition.  Pursuant to Local Rule 83.4(a), an agreement or stipulation between attorneys is enforceable, *inter alia*, if "it is in an electronic communication sent by an attorney of record for the party against whom enforcement is sought."  McGarvey's emails indicate that Plaintiffs agreed that Danno's deposition was to be taken by GEICO.  (*See* Docs. 75-1, 75-2.)

### D. Conclusion

Because GEICO has met its burden of showing with specificity that Danno is likely to be a necessary witness at trial and no exception under Rule 3.7(a) applies, Danno is disqualified from acting as an advocate at trial.  Accordingly, Danno is prohibited from making opening or closing statements, examining witnesses, and taking depositions.  *See Timlick*, 2019 WL 4934782, at *4. "However, [Danno] may still participate as counsel or co-counsel in other ways that are consistent with the applicable rules and case law, including all pretrial activities beside depositions."  *Id.* (internal quotation marks and footnote omitted). GEICO is permitted to take Danno's deposition, recognizing that the protections of work-product and attorney-client privilege have not been waived.  Finally, each party shall bear their own fees and costs on the present motion.

## III.   Plaintiffs' Second Motion to Compel Discovery

Plaintiffs have filed a second motion to compel discovery.  (Doc. 76.) Plaintiffs originally sought an order compelling GEICO to fully respond to

Requests for Production Nos. 14, 23, 24, 25, 48, 49, 50, and 51 and Interrogatory

No. 3.  (*Id.*)  However, the parties subsequently resolved a number of their

disputes, (*see* Doc. 87 at 2; Docs. 89, 95), leaving only three issues: (1) whether

GEICO's supplemented objections are untimely; (2) whether GEICO should be

compelled to provide the name and contact information for other subrogation files

pursuant to Request Nos. 48, 49, 50, and 51; and (3) whether GEICO should be

compelled to identify GEICO employees who are the most knowledgeable about

how the documents produced by GEICO are kept in the ordinary course of

business as requested in Interrogatory No. 3.  GEICO prevails on all three.

### A.    Timeliness

Plaintiffs first argue that any objections not raised in GEICO's original

discovery responses are waived.  They are wrong.

The first inquiry is whether the automatic-waiver provision contained in

Rule 33 applies in the Rule 34 context.  Pursuant to Rule 33(b)(4), "[a]ny ground

not stated in a timely objection is waived unless the court, for good cause, excuses

the failure."  While Rule 34 does not contain this language, "courts have

interpreted the rule regarding waiver consistent with Rule 33."  *Liguori v. Hansen*,

2020 WL 760747, at *11 (D. Nev. Mar. 6, 2012) (internal quotation marks

omitted); *see also Richmark Corp. v. Timber Falling Consul.*, 959 F.2d 1468, 1473

(9th Cir. 1992) (referring to both Rule 33 and Rule 34 before stating "[i]t is well

established that a failure to object to discovery requests within the time required
constitutes waiver of any objection"). Thus, Rule 34 objections are subject to
waiver unless "good cause" is shown. *See Liguori*, 2012 WL 760747, at *12
(collecting cases on waiver standard for Rule 34).

The next question is whether GEICO has shown "good cause" to excuse its
later-raised objections. It has. The Court retains broad discretion in determining
whether there is good cause. *Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1087
(9th Cir. 2002) (citing *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 607
(9th Cir. 1992)). The good cause inquiry focuses on the diligence of the party
seeking the modification or amendment. Here, GEICO persuasively argues that its
responses to Plaintiffs' discovery requests changed dramatically when the Court
decided in March 2021 that it had personal jurisdiction over the GEICO affiliate
defendants. Because the GEICO affiliate defendants had been previously
dismissed, (*see* Doc. 15), GEICO's original contrary position was reasonable. And
GEICO showed proper diligence in amending its responses after that time to reflect
the reality that the GEICO affiliate defendants were to remain in the case.

**B.     Names and Contact Information**

Requests for Production Nos. 48, 49, 50, and 51 seek information on twenty
randomly selected insureds from each of the four GEICO defendants. (*See* Doc.
76-2.) The requested information includes "(a) the amount of subrogation

16

recovered, (b) the insureds name and address and, if known, phone number, and (c) the evidence on which the PRU relied to determine whether the insured had been made whole." (*See, e.g.*, *id.* at 14.)  The parties subsequently agreed on GEICO's disclosure of the information requested in (a) and (c), leaving a dispute only over the release of the name and contact information associated with those files.  (*See* Doc. 89 at 3.)

Plaintiffs seek the names and contact information for other similarly situated putative class members to "demonstrate both the consistency of and problems with [GEICO's] application of its Subrogation program in violation of the requirements of Montana's made-whole rule."  (Doc. 77 at 13.)  Plaintiffs note that "discovery of the putative class members' identities and contact information is routinely allowed" prior to class certification.  (*Id.* at 14 (quoting *Sung Gon Kang v. Credit Bureau Connections, Inc.*, 2020 WL 1689708, at *3 (E.D. Cal. Apr. 7, 2020)).)  GEICO, on the other hand, does not necessarily argue that Plaintiffs should not be able to get the information, but rather that its disclosure should occur only after class certification.  Thus, the parties' dispute boils down to not *if*, but *when*, such information should be disclosed.

GEICO relies on *In re Williams-Sonoma*, 947 F.3d 535 (9th Cir. 2020), to argue that putative class members' names and contact information are not within the scope of discovery at the pre-certification stage.  In *Williams-Sonoma*, a

Kentucky plaintiff filed a class action in California alleging misrepresentation about thread count and seeking damages under California consumer protection law. *Id.* at 537–38. After the district court determined that Kentucky law governed the plaintiff's claims and prohibited him from bringing a class action, the plaintiff sought discovery from Williams-Sonoma for the sole purpose of identifying a California purchaser who could serve as a new class representative. *Id.* at 538. Following a writ of mandamus on the question, the Ninth Circuit concluded that "using discovery to find a client to be the named plaintiff before a class action is certified is not within the scope of Rule 26(b)(1)." *Id.* at 540. GEICO therefore argues that *Williams-Sonoma* bars the discovery requested here.

But some district courts have since distinguished *Williams-Sonoma* where the pre-certification discovery was sought for purposes beyond or in addition to identifying new named plaintiffs. *See Gamino v. KPC Healthcare Holdings, Inc.*, 2021 WL 2309974, at *2 (C.D. Cal. June 2, 2021) ("*Williams-Sonoma* did not bar the production of class contact information for all purposes in all circumstances."); *Perez v. DirecTV Grp. Holdings, LLC*, 2020 WL 3124353, at *2 (C.D. Cal. May 14, 2020); *Florece v. Jose Pepper's Rests., LLC*, 2021 WL 351413, at *5 (D. Kan. Feb. 2, 2021). These cases persuasively reason that Rule 26(b)(1) discovery can include class identification and contact information insofar as that information is relevant to class certification questions, such as commonality and typicality.

Here, GEICO has agreed to disclose all the information regarding other subrogation claims in Montana except for the individuals' names and contact information.  This process allows Plaintiffs to get the "relevant" information needed for their certification arguments without requiring disclosure of specific identification information.  Thus, GEICO has the better argument.  If Plaintiffs seek this information for the reasons recognized under Rule 26(b)(1), the disclosure offered by GEICO is sufficient.  But if Plaintiffs seek the information to bolster their class representatives, that would be an impermissible use of discovery and not allowed under *Williams-Sonoma*.  As a result, GEICO is not required to disclose specific identification information until after a class is certified so long as it discloses the information identified in (a) and (c) above.

### C.    Interrogatory No. 3

In Interrogatory No. 3, Plaintiffs request information on the GEICO employees who are the most knowledgeable about how the documents produced by GEICO are kept in the ordinary course of business and communication regarding the collecting and organizing those documents.  Plaintiffs insist that they need the information to better understand what role the disclosed documents played in GEICO's operations given "the disjointed and disorganized fashion in which the documents have been produced."  (Doc. 77 at 18.)  Plaintiffs further argue that merely seeking the "identity" of an individual does not infringe on privilege

protections.  (*Id.*)  These arguments are not persuasive because, as explained in GEICO's response, document selection and curation were performed by in-house and outside counsel.  Thus, any further information would be privileged.  It is also not appropriate for Plaintiffs to conduct discovery on discovery.

### D.    Conclusion

Based on the foregoing, GEICO is not compelled to provide any information beyond what the parties have agreed to.  (*See* Docs. 89, 95.)  Nevertheless, each party shall bear their own costs and fees because GEICO agreed to turn over additional materials as part of the motion to compel process.

## IV.    Plaintiffs' Motion to File Documents in the Public Record

Finally, in seeking class certification, Plaintiffs rely on an affidavit prepared by Plaintiffs' counsel, Allan McGarvey.  (*See* Doc. 65-1.)  Attached to that affidavit, and at issue here, are fourteen exhibits, comprising 400 pages.  (*See* Doc. 73 (lodged under seal).)  Plaintiffs seek to file these attachments in the public record, (Doc. 71), over GEICO's objection, (Doc. 78).  On its face, the defugalty appears to be over whether certain documents should be filed under seal; however, closer examination of the documents and Plaintiffs' limited reliance on them reveals that the better question is whether several of the exhibits should have been filed at all.  Ultimately, Plaintiffs must better curate their exhibits, which limits the present inquiry to a narrower set of material.

A.      **Legal Standard**

As a starting point, there is a "strong presumption in favor of access to court records." *Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1096 (9th Cir. 2016) (internal quotation marks omitted). "Accordingly, a party seeking to seal a judicial record [] bears the burden of overcoming this strong presumption by meeting the 'compelling reasons' standard." *Id.* (internal quotation marks and alteration omitted). "Under this stringent standard, a court may seal records only when it finds a compelling reason and articulates the factual basis for its ruling, without relying on hypothesis or conjecture."[1] *Id.* at 1096–97 (internal quotation marks and alteration omitted). "The court must then conscientiously balance the competing interest of the public and the party who seeks to keep certain judicial records secret." *Id.* (internal quotation marks and alteration omitted). While the district court has discretion to determine what constitutes a compelling reason, "business information that might harm a litigant's competitive standing" is generally recognized as such. *Id.* (quoting *Nixon v. Warner Commnc'ns, Inc.*, 435 U.S. 589, 598–99 (1978)); *see also Kamakana v. City & Cty. of Honolulu*, 447

---

[1] Sealed materials attached to a motion only tangentially related to the underlying merits of the case are evaluated under a lesser, "good cause" standard. *Ctr. for Auto Safety*, 809 F.3d at 1097–99, 1101. A motion for class certification is subject to the more rigorous "compelling reasons" standard. *See Baker v. SeaWorld Ent., Inc.*, 2017 WL 5029612, at *3 (S.D. Cal. Nov. 3, 2017) (collecting cases).

F.3d 1172, 1179 (9th Cir. 2006) ("In general, 'compelling reasons' sufficient to outweigh the public's interest in disclosure and justify sealing court records exist when such 'court files might have become a vehicle for improper purposes,' such as the use of records to . . . release trade secrets.").

**B.     Confidentiality Agreement**

As a threshold issue, the parties dispute whether Plaintiffs fulfilled their obligations under the parties' Confidentiality Agreement and whether that agreement dictates what can and should be filed in the public record.  As to the first issue, the Confidentiality Agreement states:

> If Confidential Material is contained in a document that a party seeks to file with the Court, the filing party must file a motion for leave to file under seal pursuant to Fed. R. Civ. P. 5.2(d) and the procedures of this Court.  To seek leave to file a document under seal, the filing party shall: (A) Consult opposing counsel to seek agreement; and (B) E-file a motion for leave to file under seal, identifying opposing counsel's position, following all applicable Local Rules seeking to file documents under seal.

(Doc. 78-2 at 8.)  GEICO argues that Plaintiffs' motion—captioned as a "Motion for Show Cause Order and Interim Order Granting Leave to file Under Seal"— does not meet this requirement.  While GEICO is correct insofar as Plaintiffs do not argue that the documents meet the sealing requirements under this Court's rules, Plaintiffs followed the most logical process under these circumstances. Plaintiffs make clear in their motion that they do not agree with GEICO's "blanket" confidential designations.  Recognizing that the information is not

Plaintiffs' to disclose, however, Plaintiffs did not simply file it publicly, but sought a temporary seal to permit GEICO to meet its burden to show that the documents should remain sealed.  GEICO's strict interpretation of the provision would require Plaintiffs to advocate for a position they disagree with; given the rigorous standard for sealing documents, such a process would be untenable.

As to the second issue, the Confidentiality Agreement is not dispositive of whether the documents should remain sealed under the "compelling reasons" standard.  *See Kamakana*, 447 F.3d at 1180 (explaining that "good cause" to seal a document under Rule 26(c) "alone will not suffice to fulfill the 'compelling reasons' standards" because the "public is entitled to access by default").

As a result, neither the parties' Confidentiality Agreement nor Plaintiffs' conduct under it are dispositive of the present motion.

## C.     Exhibits

The exhibits at issue consist of the following:

| Exs. 1 and 2: | complete deposition transcripts from two GEICO employees, (Doc. 73 at 22–178); |
| Ex. 3: | the complete Onboarding the Training procedure for the PRU, (*id.* at 179–271); |
| Exs. 4 & 5: | four complete chapters of GEICO's claims manual, (*id.* at 272–92); |
| Exs. 6 & 7: | PRU's OneNote Documents, (*id.* at 293–389); |

Exs. 8 & 10:      step-by-step procedures in GEICO's proprietary
                  internal ATLAS claims handling software system,
                  (*id.* at 390–409, 414–16);

Ex. 9:            Commercial Claims Handling Form Letters, (*id.* at
                  410–13);

Ex. 11:           documents from James Lee Construction's Claims
                  file, (*id.* at 417–25);

Exs. 12 & 13:     Notes of Financial Statements filed in other
                  dockets, (*id.* at 426–429); and

Ex. 14:           Pages 19 through 21 of GEICO's responses to
                  Plaintiffs' first set of discovery requests, (*id.* at
                  430–33).

(*See* Ex. 73.)  GEICO does not object to the public filing of Exhibits 9,[2] 11, or 14.

The remaining exhibits are discussed below.  *See Ctr. for Auto Safety*, 809 F.3d at

1096–97 (requiring specific factual findings for record).

### 1.    Exhibits 1 and 2: Depositions

Exhibits 1 and 2 are the complete depositions of GEICO employees Charles

G. Brown and Jeannie Higbee.  Both employees are managers with GEICO, the

former works with the PRU, (*see* Doc. 73 at 26), and the latter is a call center

manager for GEICO's claims department, (*see id.* at 95).  While GEICO does not

object to Plaintiffs filing the cited excerpts in the public record, GEICO insists that

---

[2] While GEICO states that it "does request that these documents remain under
seal," (*see* Doc. 78 at 10), the context and phrasing of that objection suggest it
inadvertently omitted the word "not."

the deposition transcripts "when taken as a whole, reveal a window into GEICO's confidential business practices." (Doc. 78 at 20.)

GEICO's blanket objection that the testimony reveals its trade secret fails to meet the particularized requirements of a "compelling reason." But Plaintiffs do not even attempt to argue that all 170 pages of min-u-script deposition testimony are relevant to the pending motion and/or need to be filed in support of the motion. To the contrary, Plaintiffs pinpoint cite only 64 pages of Brown's 178-page deposition and only 30 pages of Higbee's 228-page deposition. In the absence of any attempt to curate these records, GEICO should not bear the burden to have them sealed; rather, Plaintiffs must file amended exhibits that contain only the relevant material cited in support of their motion. And because GEICO does not object to that limited material appearing in the public record, there is then no further issue with these records.

### 2.    Exhibit 3: PRU Procedures

Exhibit 3 comprises just under a hundred pages and contains the complete onboarding and training procedure for the PRU. It presents similar concerns as Exhibits 1 and 2. While the McGarvey Affidavit cites Exhibit 3 seven times, all but one of those citations are to the first few pages, which are already filed in the public record. (*See* Doc. 48 at 45–48.) The remaining citation merely states that the PRU operates pursuant to a set of written procedures. (*See* Doc. 65-1 at ¶ 2.)

Although Plaintiffs argue that the omissions from those procedures are just as important as their contents, Plaintiff do not need to file the entire document to make that point. Plaintiffs must therefore limit Exhibit 3 to the first four pages of that document, which are all already filed in the public record.

### 3.      Exhibits 4 and 5: Claims Manual Chapters

Exhibits 4 and 5 raise the same concerns identified with Exhibits 1, 2 and 3. Exhibits 4 and 5 are chapters out of GEICO's claims manuals, both present and past. While each exhibit is approximately 10 pages long, the McGarvey Affidavit only cites to the chapters in their entirety for the general proposition that they govern the PRU's operation. (*See* Doc. 65-1 at ¶ 2.)  As was the case with Exhibit 3, Plaintiffs seem to argue that what is not in those manuals is just as important as what is; however, Plaintiffs make no attempt to curate those materials for their motion for class certification. In the absence of a direct reference, submission of the full chapters at this stage of the proceeding is neither necessary nor helpful to the Court's class determination. Exhibits 4 and 5 are stricken.

### 4.      Exhibits 6 and 7: PRU OneNote Document

GEICO describes Exhibits 6 and 7 as an evolving OneNote Document created and used by the PRU. Exhibit 6 is approximately 70-pages long and Exhibit 7 is approximately 30-pages long. As with the earlier exhibits, the McGarvey Affidavit cites both exhibits in their entirety in generally stating what

governs the PRU's operations.  (*See* Doc. 65-1 at ¶ 2.)  The Affidavit then cites 2

individual pages of Exhibit 6, (*see id.* ¶¶ 7, 14, 19), and 3 individual pages of

Exhibit 7, (*id.* ¶¶ 4, 6, 14).  It is once again unclear why Plaintiffs seek to file the

entirety of these documents when they rely on less than ten percent of them.  That

is especially concerning insofar as the citations to Exhibit 7 in paragraphs 6 and 14

are to BATES page numbers that do not even appear in Exhibit 7, leaving only one

real pinpoint citation to Exhibit 7.  (*See id.* ¶ 4.)  Plaintiffs must limit their filing to

those portions of these documents actually referenced.

### 5.     Exhibits 8 and 10: ATLAS Procedures and System

Exhibits 8 and 10 describe the procedures and system for GEICO's

proprietary ATLAS software.  Exhibit 8 is ten pages long and Exhibit 10 is three

pages long.  Exhibit 10 is duplicative of pages contained in Exhibit 8.  (*Compare*

Doc. 73 at 406–07 *with id.* at 415–16.)  As a result, Exhibit 10 is stricken.

Exhibit 8 is the first exhibit that appears to be properly curated in support of

Plaintiffs' motion for class certification.  Unlike the previous exhibits, the

McGarvey Affidavit specifically references several individual pages, and the

contents of those pages are relevant to Plaintiffs' specific subrogation arguments.

Thus, GEICO must show a compelling reason that Exhibit 8 should not be filed in

the public record.  It has done so.  As discussed above, GEICO's subrogation

practices and procedures qualify as trade secrets and are therefore entitled to some

protection from public disclosure at this stage of the proceedings.  That interest is heightened in this instance by the fact that Exhibit 8 describes what Plaintiffs admit is "proprietary" software.  The exhibit shows how the ATLAS system functions at every step.  While that process is generally relevant to the issues before the Court here, the nuanced function of the ATLAS system is not.  Neither the appearance of the drop-down menus nor knowledge of the exact icons in the program are necessary to resolve the present motion.  As a result, the public interest in that information is minimal and Exhibit 8 shall be maintained under seal.

### 6.     Exhibits 12 and 13: Notes to Financial Statements

Exhibits 12 and 13 are marked as "Notes to Financial Statements" and they outline GEICO's operations and value.  Each exhibit is only two pages long and are specifically cited in the McGarvey Affidavit.  (*See* Doc. 65-1 at ¶¶ 18, 24, 26, 30, 31, 38.)  As a result, these exhibits, like Exhibit 8, were properly curated in support of the pending motion for class certification.  But, also like Exhibit 8, their disclosure raises concerns regarding GEICO's internal operation and finances.  However, the McGarvey Affidavit states that these exhibits "are true and correct copies of documents from financial statements filed publically [sic] in multiple states."  (*Id.* at 2.)  If they truly are public documents, there is no reason to maintain them under seal in this case; a fact recognized by GEICO.  Plaintiffs must

28

therefore explain how they acquired these documents to ascertain whether further analysis is required.

### 7.     Exhibit 14: Discovery Responses

Finally, Exhibit 14 is three pages of discovery responses in which GEICO makes generalized statements about the operation of the PRU, such as that "[a]ll PRU employees are compensated by Government Employees." (*See* Doc. 73 at 433.) GEICO does not make a specific argument about these specific discovery responses as to meet the "compelling reasons" standard. Nor does it appear that such as showing is possible in light of the generalized information provided. As a result, Exhibit 14 may be filed in the public docket.

### CONCLUSION

Based on the foregoing, IT IS ORDERED:

(1)     GEICO's motion for a protective order (Doc. 61) is GRANTED in PART and DENIED in PART. Topics 1–16 are limited to procedures and policies actually applied in GEICO's subrogation of claims in Montana and GEICO is allowed to supplement discovery on those topic areas consistent with Rule 26. Topic 24 is narrowed to remove Plaintiffs' vague "catch-all" request for additional financial information. Each party shall bear their own fees and costs.

(2)     Plaintiffs' motion for a protective order (Doc. 67) is GRANTED in PART and DENIED in PART. Plaintiffs' motion is denied insofar as Danno is a

necessary witness—and therefore disqualified from conducting depositions, making opening and closing arguments, and examining witnesses at trial—and GEICO is permitted to take his deposition.  Plaintiffs' motion is granted insofar as they have not waived attorney-client or work product protections.  Each party shall bear their own fees and costs.

(3)     Plaintiffs' second motion to compel discovery (Doc. 76) is DENIED. Each party should bear their own costs and fees.

(4)     Plaintiffs' motion to file documents in the public record (Doc. 71) is GRANTED in PART and DENIED in PART as follows:

(a)     Plaintiffs must curate Exhibits 1, 2, 3, 6, and 7, filing only those pages specifically cited in the public record on or before September 1, 2021;

(b)     Exhibits 4, 5, and 10 are STRICKEN;

(c)     Exhibit 8 shall be refiled under seal on or before September 1, 2021; and

(d)     Plaintiffs must provide the public source of Exhibits 12 and 13 on or before September 1, 2021.

(5)     Argument on the motions addressed above will no longer be heard at the September 7, 2021 hearing.  However, the parties should be prepared to address the following: Plaintiffs' Motion for Class Certification, (Doc. 64);

GEICO's Motion for Judgment on the Pleadings, (Doc. 79); and GEICO's Motion

to Compel Compliance with Appraisal Process, (Doc. 96).

DATED this 18th day of August, 2021.

_____2:18pm
Donald W. Molloy, District Judge
United States District Court

31